IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| CHRIS ANSELMO, individually, and on behalf of all others similarly situated and TRACY TORRISE, ) ) ) | Civil Action No. 9:09-cv-2466-MBS-BM |
| Plaintiffs, ) | |
| vs. ) | |
| THE WEST PACES HOTEL GROUP, LLC; WPHG DAUFUSKIE HUMAN RESOURCES, LLC; WILLIAM R. DIXON, JR., individually; GAYLE BULLS DIXON, individually; and HORST H. SCHULTZE, individually, ) ) ) ) ) | |
| Defendants. ) | |
| vs. ) | |
| THE WEST PACES HOTEL GROUP, LLC; WPHG DAUFUSKIE HUMAN RESOURCES, LLC; HORST H. SCHULTZE, individually; ) ) ) | **REPORT AND RECOMMENDATION** |
| Cross Claimants, ) | |
| vs. ) | |
| WILLIAM R. DIXON, JR., individually; and GAYLE BULLS DIXON, individually; ) ) | |
| Cross Defendants, ) | |
| vs. ) | |



1

|  |  |
|---|---|
| WILLIAM R. DIXON, JR., individually; | ) |
| Cross Claimant, | ) |
| vs. | ) |
| THE WEST PACES HOTEL GROUP, LLC; WPHG DAUFUSKIE HUMAN RESOURCES, | ) |
| Cross Defendants, | ) |

This action has been filed by the Plaintiffs[1], formerly employees of the Daufuskie Island Resort. Plaintiffs are pursuing four causes of action in this case: 1) violation of the South Carolina Payment of Wages Act for the Defendants' alleged failure to pay accrued time off ("PTO"); 2) violation of ERISA for deducting health insurance premiums, but failing to pay the health care provider, UnitedHealthCare, those premiums for the months of November and December 2008; 3) Breach of Fiduciary Duty for failure to pay health insurance premiums, and failure to notice and provide Consolidated Omnibus Budget Reconciliation Act ("COBRA") rights/benefits;[2] and 4) piercing the corporate veil against WPHG and WPHG-DHR. See Amended Complaint.

The Defendants WPHG, WPHG-DHR and Schultze have filed a partial motion to

---

[1]The original Plaintiff was Chris Anselmo. Anselmo styled the complaint as "Chris Anselmo, individually, and on behalf of all others similarly situated." However, although there is a pending motion to certify class, a class action has not yet been authorized. The second Plaintiff, Tracy Torrise, was added as a party Plaintiff by order filed July 23, 2010.

[2]Based upon the representation of Defendant West Paces Hotel Group. LLC (WPHG) that it was the administrator for the health benefits plan at issue in this action, the Defendants WPHG Daufuskie Human Resources, LLC (WPHG-DHR) and Horst H. Schultze have been dismissed as party Defendants in Plaintiffs' ERISA claims set forth in counts two and three of the Amended Complaint. See Stipulation of Dismissal filed October 8, 2010.

2



dismiss pursuant to Rule 12, F.R.Civ.P.[3]  A hearing was held on October 4, 2010, following which final briefing on this motion was completed on October 21, 2010.[4]  Defendants' motion is now before the Court for disposition.[5]

**Allegations of the Amended Complaint**

Plaintiffs are alleged to be former employees of the Defendants, who together were the owners and operators of the Daufuskie Island Resort (hereinafter "the Resort").  The Resort was owned by DIP.  WPHG operated the Resort pursuant to an Operating Agreement with DIP.  WPHG-DHR is alleged to be wholly owned, controlled, and/or operated by WPHG.  The Defendants Dixon are alleged to be officers and/or agents of DIP, while Defendant Schultze is alleged to be an officer and/or agent of Defendants WPHG and WPHG-DHR.

Pursuant to the Operating Agreement, WPHG was responsible for hiring and firing employees, with the cost of all employees being an operating expense borne by DIP.  All of the Defendants are alleged to be "employers" of the Plaintiffs as defined by South Carolina Code Annotated § 41-10-10, et seq., and are alleged to have employed over one hundred and fifty employees.  Plaintiffs allege that they were to be compensated for their work with a combination of

---

[3] Another party originally named as a Defendant, Daufuskie Island Properties, LLC (DIP), was dismissed as a party Defendant on December 18, 2009. See Court Docket No. 29. The remaining two Defendants, William Dixon and Gayle Dixon, are proceeding pro se.

[4] At the hearing on October 4, 2010 the motion to certify class was also considered and taken under advisement.

[5] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The parties have filed a motion to dismiss and a motion for class certification.  As these are dispositive motions, this Report and Recommendation is entered for review by the Court.



pay and other benefits, which included "paid time off", or PTO, pursuant to a set formula. Plaintiffs allege that the Defendants followed the stated policy with respect to PTO hours up until October 2008, with all employees of the Defendants whose employment was terminated prior to October 2008 being paid in full the balance of their accrued PTO. Many employees of the Defendants also elected to purchase health insurance through the Defendants.

Plaintiffs allege that in late 2008 it became apparent that the Defendants were going to have to fire employees, and on August 26, 2008 the Defendants sent the Plaintiffs a letter titled "Notice Pursuant to WARN Act"[6], which stated in part that Plaintiffs' employment with WPHG would soon terminate. Plaintiffs allege that individual employees of the Defendants informed the Dixons and Schultze that the Resort was financially insolvent, and further allege that "agents and servants of all corporate Defendants" were also informed that the Resort was financially insolvent. Plaintiffs allege that during this period of time the Defendants represented to the Plaintiffs that if they were fired, their PTO would be their severance pay, but that upon their employment with the Defendants being terminated, they were not paid their earned and accrued PTO. Plaintiffs allege that on January 1, 2009, DIP took over as the "employer" for all remaining employees who had not already been terminated, with all employees remaining at the Resort at that time being informed that their PTO that had accrued during their employment with WPHG would be tentatively provided on a date uncertain or had been erased.

Plaintiffs allege in their first cause of action that the Defendants failure to pay PTO compensation constitutes a breach of express and/or implied terms of employment, and that Plaintiffs are entitled to judgement for their accrued and earned PTO. Plaintiffs further allege that the amount

---

[6]Worker Adjustment and Retraining Notification (WARN) Act, 29 U.S.C. § 2110, et seq.



due is "compensation" within the meaning of S.C. Code Ann. § 41-10-10, et seq. (the South Carolina Wage Payment Act), and that the Defendants failure to pay Plaintiffs their PTO is a violation of that Act.

Plaintiffs allege in their second cause of action that employees had the option of buying health insurance through the Defendants, and that employees who purchased health insurance through the Defendants had money deducted from their weekly paychecks for the purpose of paying for this health insurance. Plaintiffs allege that United Healthcare Services, Inc. was contracted by the Defendants to provide this health insurance, but that the Defendants did not pay UnitedHealthcare for the premiums due in the months of November and December 2008, nor did Defendants inform Plaintiffs that their health insurance premiums were not being paid. Plaintiffs allege that as a result of this conduct, UnitedHealthcare ceased honoring insurance claims from Plaintiffs who elected to purchase health insurance through the Defendants as of November 2008, resulting in insurance claims for treatments for the months of November and December 2008 being denied, and that Plaintiffs are entitled to judgment against the Defendants for any and all ERISA remedies, including payment of claims, attorneys fees, penalties, COBRA rights, and COBRA penalties.

Plaintiffs allege in their third cause of action that the Defendants were all plan fiduciaries, and that the Defendants failure to pay Plaintiffs' health insurance premiums and failure to notice and provide COBRA rights/benefits constitutes a breach of their fiduciary duties, for which Plaintiffs are entitled to judgment, including attorneys fees, penalties, and any other available remedy.

In their fourth and final cause of action, Plaintiffs allege that the Defendants WPHG-



DHR and WPHG are alter egos of one another, with WPHG-DHR being a wholly owned subsidiary of WPHG, and that if necessary Plaintiffs should be allowed to pierce the corporate veil of WPHG-DHR in order to hold WPHG liable for any judgment arising from the facts as set forth in the Complaint. See generally, Amended Complaint.

## Discussion

When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiffs have failed to set forth sufficient factual matters to state a plausible claim for relief "on its face." Ashcroft v. Iqbal, 129 S.Ct. 2937, 949 (220). See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)[While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, factual allegations must be enough to raise a right to relief above the speculative level].

## I.

## (PTO Claim)

Defendants initially argue that all causes of action in the Amended Complaint which relate to Union members covered by the applicable Collective Bargaining Agreement (CBA)[7] are preempted by the National Labor Relations Act (NLRA), subjecting these PTO claims to dismissal.

It is undisputed that Plaintiff Torrise as well as many of the employees Plaintiffs wish to have part of a class certification were members of the International Union of Operating Engineers,

---

[7]Although evidence outside the four corners of the Amended Complaint in this case, including the above referenced CBA, has been submitted both in support and opposition to the Defendants' motion for partial dismissal, this material can be considered without converting Defendants' motion to a Rule 56 motion for summary judgment. See Smith v. School District of Greenville County, 324 F.Supp.2d 786, 789 (D.S.C. 2004).



and that the International Union of Operating Engineers filed charges with the National Labor Relations Board (NLRB) asserting, inter alia, that the Defendants had failed to pay these Union employees monies owed for accrued paid time off (PTO). The Union's filing resulted in a settlement agreement with WPHG-DHR and DIP, pursuant to which employees subject to the CBA received PTO and interest.[8]  See Court Docket Nos. 67-1, 67-2, 148 (pp. 8-13).[9]  Plaintiffs argue that the settlement agreement reached in the NLRB action does not affect the claims set forth in the complaint, arguing that the PTO claims asserted under state law in the complaint survive the settlement agreement, even as applied to Union employees covered by the CBA.[10]  However, after careful review and consideration of the arguments presented by the parties, the undersigned finds and concludes that the Defendants' motion to dismiss any PTO claims for Plaintiffs or potential Plaintiffs who were covered by the CBA should be granted, with any such claims being dismissed.

First, § 301 of the Labor Management Relations Act (LMRA) preempts any state claims involving violations of a CBA, or that require the interpretation of a CBA. Allis-Chalmers

---

[8] Pursuant to the settlement, the amounts of PTO listed in the settlement agreement represent eighty percent of the total amount allegedly owed to each bargaining unit member.

[9] Anselmo was not a Union employee and was not therefore part of the NLRB settlement. However, Torrise was a Union employee, and will receive an award of PTO pursuant to the settlement agreement. See Court Docket No. 148-1, pp. 3-4.

[10] As one defense to Defendants' motion, Plaintiffs argue that since their PTO claim is based solely on state law, dismissal of the PTO claim pursuant to a Rule 12 motion is inappropriate under the "well-pleaded complaint rule", which provides in part that "federal jurisdiction exists only when a federal question is presented on the face of the Plaintiff's properly pleaded complaint without consideration of any potential defenses". Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004)(citing Aetna Health, Inc. v. Davila, 542 U.S. 200, 207-208 (2004)). This argument is without merit. Cf. Lontz v. Tharp, 413 F.3d 435, 441 (4th Cir. 2005)[If a claim is preempted under § 301, "there is no such thing as the state cause of action . . . since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action"] (citing Avco Corp. v. Aero Lodge No. 735, Int'l. Ass'n. of Machinists, 390 U. S. 557, 560 (1968).

7



Corp. v. Lueck, 471 U.S. 202, 213 (1985)[State law causes of action preempted by § 301 where evaluation of state law claim is "inextricably intertwined with consideration of the terms of the labor contract"]; International Brotherhood of Electric Workers v. Hechler, 481 U.S. 851, 859, n. 3 (1987)["[w]hen a state-law claim is substantially dependent on analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim"]. Here, the applicable CBA provides in Article 17 [Grievance/Arbitration] that the provisions of that Article "shall be the exclusive method to be followed by the Union and the associates [i.e., the employees] in the adjustment or settlement of all grievances and disputes regarding the interpretation or application of this agreement." See Court Docket No. 22-1, p. 19. The CBA then sets forth specific rights and procedures for employees governing compensation and benefits, including for the payment of PTO. Article 27 sets forth the eligibility for PTO; how PTO is accrued; what rate of compensation will be paid; that employees who separate from employment may request pay for accrued, unused PTO hours; and at what rate employees who separate from employment may request pay for accrued, unused PTO hours. See Court Docket No. 22-1, pp. 27-30. Hence, Defendants correctly note that the allegations in this case invoke the NLRA as related to the federal statutory rights of employees covered by the CBA, while the settlement agreement entered into as a result of the grievance filed by the Union shows that the NLRA resolved these claims as to employees covered by the CBA.

Plaintiffs argue that § 301 of the LMRA does not preempt a state law claim that exists independently of a CBA and is not "inextricably intertwined" with a consideration of the terms of a CBA. Here, however, the only way to determine what the Union employees' rights were to PTO and what amounts were to be paid pursuant to those rights is by reference to the CBA. Therefore,



these Union employees' right to PTO was "inextricably intertwined with consideration of the terms" of the CBA, because the CBA is what sets out what those rights were. Lueck, 471 U.S. at 213; Hechler, 481 U.S. at 859, n. 3 ["[w]hen a state-law claim is substantially dependent on analysis of a collective-bargaining agreement, a plaintiff may not avoid the pre-emptive force of § 301 of the LMRA by casting the suit as a state-law claim"]; cf. Lewis v. Local 382, Int'l. Broth. of Elec. Workers (ALF-CIO), 481 S.E.2d 135, 139 (S.C. Ct. App. 1996), aff'd., 518 S.E.2d 583 (S.C. 1999)[Affirming preemption under the LMRA and finding that if a state law claim "is founded on a duty that is created by a collective bargaining agreement and without existence independent of the agreement, then it is preempted by § 301"], cert. denied, 528 U.S. 1080 (2000).

Plaintiffs argue that reference to the CBA to determine Union employees' PTO rights is not necessary because the PTO formula on which Plaintiffs' claims are based is also found in private employment contracts separately entered into by each member of the putative class of Plaintiffs, thereby making accrued PTO a state law contract right in addition to any rights Union employees may have had under the CBA. This argument is based on language contained in employee handbooks purportedly given to all employees.[11] However, Plaintiffs concede that the PTO accrual provisions contained in the employee handbooks mirror those of the CBA. See Court Docket Nos. 22-1, pp. 27-30, Court Docket No. 43-2, pp. 38-41.[12] Further, the CBA notes the existence of employee handbooks, and provides that any *conflicting* provision in the handbook would

---

[11] There is actually some dispute as to what version of an employee handbook is applicable, as more than one handbook was apparently provided to employees. See Court Docket 43-2; see also Court Docket No. 164, p. 55.

[12] While Plaintiffs argue that some employees received their handbooks prior to the enactment of the CBA, the CBA specifically states that it supercedes and nullifies all prior agreements. See Court Docket No. 22-1, p. 37.



be inapplicable to the covered employees. See Court Docket No. 22-1, p. 37. Union employees may not avoid § 301 preemption by asserting that a policy manual constitutes an independent contract of employment separate and apart from an applicable CBA. See Symonds v. Day & Zimmerman, Inc., No. 92-4135, 1992 WL 387003 at * 3 (5th Cir. 1992)[Finding that "[i]n attempting to be covered by both a collective bargaining agreement and an independent contract based on a policy manual, [Plaintiff] 'is essentially asking for a second bite at the apple'"](citing Shivers v. Saginaw Transit System, 719 F.Supp. 599, 602 (E.D.M. 1989)[Discussing the effect of policy manuals on the preemptive effect of a CBA]); see also Abell v. Gates Corp., No. 09-333, 2010 WL 290588 at * 3 (W.D.Ky. Jan. 20, 2010). Indeed, Defendants correctly note that once a CBA covering employee PTOs is in place, they are legally *prohibited* from dealing directly with the bargaining unit employees to negotiate or contract with them over terms of employment already subject to the CBA. See Dorsey Trailers, Inc. v. NLRB, 233 F.3d 831, 838 (4th Cir. 2000); American Pine Lodge Nursing and Rehabilitation Center v. NLRB, 164 F.3d 867, 875 (4th Cir. 1999)[Finding that an employer violates NLRA if it engages in direct dealing with employees thereby interfering in the collective bargaining process and in the Union's role as the exclusive bargaining representative]; United Cerebral Palsy of New York City and Local 2, United Federation of Teachers, Am. Federation of Teachers, AFL-CIO, 347 NLRB 603, 608 (NLRB 2006).

       Finally, Plaintiffs argue that because the settlement agreement provides for payment of only eighty percent of unpaid PTO owed to employees covered by the CBA, the remaining twenty percent of unpaid PTO not provided for in the settlement agreement remains to be recovered in this action by the covered employees, in addition to other remedies provided under the South Carolina Payment of Wages Act, noting that the settlement agreement specifically provides that it "settles only



the allegations in the above captioned case(s), and does not constitute a settlement of any other case(s) or matters." However, as already noted, § 301 preempts any such claims. In any event, as clearly indicated in the cited language , the agreement *did settle* the claims and allegations that were raised in the NLRB action. The allegations raised in that action specifically included that the "employer has failed to follow Article 27 of the Collective Bargaining Agreement, by not compensating employees for accrued paid time off." See Court Docket No. 22-2; see also Court Docket No. 67-1. Therefore, by the specific terms of the settlement agreement, the allegations concerning non-payment of PTO were settled. The agreement further specifically provides that "the respective amounts of back pay set forth herein shall represent the loss of earnings of the employees respectively to this date." Hence, the claims for PTO for those employees covered by the CBA have been fully resolved through the NLRB's and the Union's action.

Based on the foregoing, the Defendants should be granted partial dismissal of any claims being asserted by Plaintiffs in their complaint for PTO due employees covered by the CBA.

## II.

### (ERISA and COBRA Claims)

The remainder of Plaintiffs' claims relate to the alleged failure of the Defendants to make premium payments for insured group health benefits provided through an ERISA-governed group health benefits plan ("group health plan"), the alleged failure to pay the benefit claims of participants in the group health plan, and claimed violations of COBRA. Defendants assert several grounds for partial or total dismissal of these claims, some of which have now been resolved.

Defendants initially argued that Plaintiffs' second cause of action asserting an ERISA claim failed to state a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) because the original named

11



Plaintiff, Chris Anselmo, had failed to allege that she was a participant in the group health plan. However, the addition of Plaintiff Tracy Torrise to the case has resolved that issue, as it is not disputed that Torrise was a participant in the group health plan, which Defendants also conceded at the hearing. See Court Docket No. 164, pp. 28-29. Plaintiffs' ERISA claim is not therefore subject to dismissal based on this argument.

Defendants also assert that the Amended Complaint fails to state a claim for benefits under § 502(a)(1)(B) because Plaintiffs have failed to plead exhaustion of administrative remedies under ERISA. Pursuant to statute, participants and beneficiaries of an ERISA covered group health plan "must both pursue and exhaust plan remedies before gaining access to the federal courts." Gayle v. United Parcel Service, 401 F.3d 222, 226 (4th Cir. 2005); Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 82-83 (4th Cir. 1989); see 29 U.S.C. § 1133. Plaintiffs argue, however, that they are not required to have exhausted ERISA's administrative remedies prior to filing this suit, and under the allegations of the complaint the undersigned is constrained to agree that the Defendants are not entitled to dismissal of Plaintiffs' ERISA claims at this time pursuant to a Rule 12 motion. Specifically, exhaustion of administrative remedies may be excused if it appears that exhaustion would have been futile, or that the Plaintiffs would have been denied meaningful access to established internal procedures. George v. Duke Energy Retirement Cash Balance Plan, 560 F.Supp.2d 444, 469 (D.S.C. 2008); see also Vogel v. Independence Federal Savings Bank, 728 F.Supp.2d 1210, 1223 (D.Md. 1990). Plaintiffs argue, and the undersigned agrees, that meaningful access to internal procedures may be denied where a plan is terminated, and Plaintiffs specifically allege in the Amended Complaint that the benefits plan was involuntarily terminated, following which the Defendants ceased operation of the Resort. See Amended Complaint, ¶ ¶ 28-31, 37.



Plaintiffs further allege that because the Defendants did not pay UnitedHealthcare the health insurance premiums due for the months of November and December 2008, UnitedHealthcare ceased honoring insurance claims, and that the Defendants also failed to provide COBRA rights/benefits to the Plaintiffs. See Amended Complaint, Second and Third Causes of Action. Therefore, the allegations of the complaint state a plausible claim for relief "on its face", and are sufficient to survive Defendants' Rule 12 Motion to Dismiss on grounds of exhaustion. Iqbal, 129 S.Ct. at 1949; see Gatewood v. W.S. Dickey Clay Mfg. Co., et al., No. 89-2407, 1991 WL 33606, at * 3 (D.Ks. 1991); Hutchinson v. Wickes Co., Inc., 726 F.Supp. 1315, 1321 (N.D.Ga. 1989); Baker v. Univeral Die Casting, Inc., 725 F.Supp. 416, 420 (W.D.Ak. 1989); Anderson v. Emergency Medicine Assoc., 860 F.2d 987, 990 (10th Cir. 1988).

Defendants also argue that the Amended Complaint fails to implead the group health plan or allege any basis for imposing liability benefits on another person. However, the Stipulation of Dismissal filed October 8, 2010, providing that Plaintiffs' second and third causes of action will proceed solely against the Defendant West Paces Hotel Group, LLC and the pro se Defendants, appears to resolve that issue. Defendants' argument for dismissal of Plaintiffs' third cause of action for breach of fiduciary duty under ERISA has been mooted by the aforementioned stipulation of dismissal. Defendants' argument that Plaintiffs' second cause of action fails to state a claim for alleged violations of COBRA is also now moot with the addition of Torrise as a party Defendant.

With regard to Defendants' arguments for dismissal of Plaintiffs' claim for penalties arising under 29 U.S.C. § 1132(c)(1), Defendants argued at the hearing that the penalties are within the Court's discretion and requested the Court to dismiss this claim since the COBRA notices have now been sent. See Court Docket No. 164, pp. 30-32. However, these notices were admittedly sent



13

over one year late and only after this case was filed. Id. Accordingly, the undersigned does not agree that dismissal on that basis is warranted at this time.

Therefore, Defendants' motion for dismissal with respect to Plaintiffs' second and third causes of action under ERISA and/or COBRA should be denied.

## III.

## (Class Certification Issue)

If the Court adopts the above recommendations with regard to the PTO claims, a substantial number of the individuals who Plaintiffs argued were potential class members will no longer have viable claims, which will drastically change the landscape of Plaintiffs' class certification arguments. Also, Defendants argue that they will need to conduct discovery prior to the Court ruling on any motion for class certification, and that Plaintiffs' motion for class certification is therefore premature at this time. See Court Docket No. 164, pp. 60-62, 67-74. The undersigned agrees.

Therefore, if the recommendation with regard to PTO claims is adopted, the Plaintiffs' pending class certification motion should be dismissed, without prejudice. A scheduling order setting forth the future course of discovery and pretrial management of this case can then be entered.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion to dismiss all causes of action in the Amended Complaint as relate to claims for PTO by employees covered by the applicable Collective Bargaining Agreement should be **granted,** including all PTO claims with regard to Plaintiff Torrise**.** If the Court adopts this Recommendation, the only PTO claims remaining



in this lawsuit will be claims not covered by the CBA and the related settlement agreement previously discussed.

Defendants' motion to dismiss with respect to Plaintiffs' ERISA and COBRA claims as set forth in the second and third causes of action of the Amended Complaint should be **denied** for the reasons stated. Plaintiffs' motion for class certification should also be **denied** that this time, without prejudice, to allow for discovery on this issue and re-briefing.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

January 6, 2011
Charleston, South Carolina



15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

