IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Chris Anselmo, individually, and on behalf of all others similarly situated, and Tracy Torrise, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| The West Paces Hotel Group, LLC; WPHG Daufuskie Human Resources LLC; William R. Dixon, Jr., individually; Gayle Bulls Dixon, individually; Horst H. Schultze, individually, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

C/A No. 9:09-2466-MBS

**ORDER AND OPINION**

Plaintiff Chris Anselmo ("Anselmo") filed the within action on August 19, 2009 in the Beaufort County Court of Common Pleas against Defendants Daufuskie Island Properties, LLC ("DIP"); West Paces Hotel Group, LLC ("WPHG"); WPHG Daufuskie Human Resources LLC ("WPHG-DHR"); William R. Dixon and Gayle Bulls Dixon ("the Dixons"); and Horst H. Schultze ("Schulze").  In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling.  DIP was dismissed as a party Defendant on December 18, 2009.  On July 23, 2010, Tracy Torrise was added as a party Plaintiff.  Plaintiffs seek to represent former employees of the Daufuskie Island Resort and Breathe Spa (hereinafter "the Resort") in four causes of action: 1) violation of the South Carolina Payment of Wages Act for the Defendants' alleged failure to pay accrued paid time off ("PTO"); 2) violation of the Employee Retirement Income Security Act ("ERISA") for deducting health insurance premiums from Plaintiffs' paychecks, but failing to pay premiums to United HealthCare, the healthcare provider, for the months of November and December 2008; and failure to notice and

provide Consolidated Omnibus Budget Reconciliation Act ("COBRA") rights/benefits;[1] 3) breach of fiduciary duty under ERISA for Defendants' failure to pay the health insurance premiums; and 4) piercing the corporate veil against WPHG and WPHG-DHR.

Defendants WPHG, WPHG-DHR and Schultze (collectively the "WPHG Defendants") filed a motion to partially dismiss the amended complaint on preemption grounds and for failure to state a claim upon which relief may be granted. Plaintiffs filed a motion to certify class.[2] On October 4, 2010, the Magistrate Judge held a hearing on the motion for partial dismissal and the motion to certify class. On January 6, 2011, the Magistrate Judge issued a Report and Recommendation recommending that: 1) the WPHG Defendants' motion to dismiss the PTO claims of employees covered by a collective bargaining agreement ("CBA"), including all PTO claims with regard to Plaintiff Torrise, be granted; 2) the WPHG Defendants' motion to dismiss with respect to Plaintiffs' ERISA and COBRA claims as set forth in Plaintiffs' second and third causes of action be denied; and 3) Plaintiffs' motion for class certification be denied without prejudice to allow for discovery and re-briefing.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The responsibility for making a final determination remains with this court. *Id.* The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The district court is obligated to

---

[1] Plaintiffs and the WPHG Defendants have stipulated to the dismissal of WPHG-DHR and Schultze as defendants to Plaintiffs' second and third causes of action based upon the representation of WPHG "that it was the administrator for the health benefits plan at issue in this action." Entry 165 at 2.

[2] Plaintiffs filed two separate motions to certify class, Entries 21 and 102, which were merged for docketing purposes by order of the Magistrate Judge on May 5, 2010. Entry 114.

conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.*

## FACTS

**I.     Plaintiffs' Allegations**

Plaintiffs allege that they are former employees of Defendants, who "together were owners and operators of the [Resort]." Amend. Compl. ¶¶ 8, 10, 15. In January 2006, DIP, as "owner" of the Resort, entered into an operating agreement with WPHG to operate the Resort. *Id.* ¶ 12. Pursuant to the operating agreement, WPHG was responsible for hiring and firing employees. *Id.* ¶ 13. The cost of paying employees was an operating expense of DIP. Amend. Compl. ¶ 13. The Dixons are alleged to be officers and agents of DIP, and Schultze is alleged to be an officer and/or agent of WPHG and WPHG-DHR. *Id.* ¶ 6 and 14. All Defendants are alleged to be "agents of DIP in the operation of the Resort." *Id.* ¶ 14.

Plaintiffs allege that Defendants were their "employers" as defined by S.C. Code Ann. §§ 41-10-10, *et seq.* and that Defendants hired over one hundred and fifty employees. Amend. Compl. ¶ 15-16. Plaintiffs allege that they "were to be compensated for their work with a combination of pay and other benefits," including PTO, pursuant to a set formula. Amend. Compl. ¶¶ 18-20. Plaintiffs allege that upon the termination of an individual's employment, Defendants were obligated to pay the individual his or her accrued PTO at the individual's base hourly rate. Amend Compl. ¶¶ 22-23. Plaintiffs also allege that many of Defendants' employees elected to purchase health insurance through Defendants, the premiums for which were deducted from Plaintiffs' weekly paychecks. Amend. Compl. ¶¶ 26, 68. Plaintiffs allege that they received an accounting of their accrued PTO on their pay stubs. *Id.* ¶ 21.

Plaintiffs allege that "[i]n late 2008, it became apparent that the Defendants were going to have to fire employees." Amend. Compl. ¶ 27. Plaintiffs further allege that on August 26, 2008, Defendants sent all putative class members a letter titled "Notice pursuant to WARN Act,[3] which stated in relevant part that the employees' employment would "soon terminate." *Id.* ¶ 28. Plaintiffs allege that Defendants represented to Plaintiffs that if they were fired, they would receive their PTO as severance pay. *Id.* ¶ 33. Plaintiffs further allege that Defendants discouraged Plaintiffs from taking PTO in the interim. *Id.* ¶¶ 32-34. Plaintiffs allege that Defendants paid PTO as agreed until October 2008, when Defendants conducted massive layoffs. Amend. Compl. ¶¶ 25, 36.

Plaintiffs allege that Defendants, who were all plan administrators and/or fiduciaries, continued to deduct health insurance premiums from Plaintiffs who elected to purchase health insurance through 2008, but failed, without informing Plaintiffs, to pay the healthcare provider for the premiums due in November and December 2008. *Id.* ¶¶ 70-72, 79. As a result, the healthcare provider ceased honoring insurance claims from Plaintiffs as of November 2008. Amend. Compl. ¶¶ 74, 77. Plaintiffs further allege that Defendants "failed to notice or provide COBRA rights/benefits to the Plaintiffs." *Id.* ¶ 78. Plaintiffs assert that upon their termination, they were "not paid their earned and accrued PTO." *Id.* ¶¶ 35, 37.

On December 31, 2008, WPHG ceased to be the employer at the Resort; DIP took over as employer the next day. *Id.* ¶¶ 37-38. Employees that remained employed by DIP were "informed that their PTO that had accrued during their employment with WPHG would be tentatively provided on a date uncertain or had been erased." Amend. Compl. ¶ 39.

---

[3] The WARN Act is the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2110, *et seq.*

4

In their first cause of action, Plaintiffs allege that the Defendants' failure to pay PTO compensation constitutes a breach of the terms of their employment and that Plaintiffs are entitled to recover three times the amount owed under the South Carolina Payment of Wages Act.  *See* Amend. Compl. ¶¶ 51-65.  In their second cause of action, Plaintiffs allege that they are entitled to judgment against Defendants "for any and all ERISA remedies, including payment of claims, attorney[s] fees, penalties, COBRA rights, and COBRA penalties" related to Defendants' alleged improper withholding of Plaintiffs' insurance premiums and failure to provide COBRA notice and rights.  Amend. Compl. ¶ 80.  In their third cause of action, Plaintiffs allege that "Defendants' failure to pay the Plaintiffs' health insurance premiums and failure to notice and provide COBRA rights/benefits constitutes a breach of [] fiduciary dut[y] for which Plaintiffs are entitled to judgment, including attorney[s] fees, penalties, and any other available remedy."  Amend Compl. ¶ 84.  In their fourth cause of action, Plaintiffs allege that Defendants WPHG-DHR and WPHG are alter egos, with WPHG-DHR being a wholly owned subsidiary of WPHG, and that "if necessary, the Plaintiffs should be allowed to pierce the corporate veil of WPHG-DHR in order to hold WPHG liable for any judgment arising from the facts as set forth in [the amended complaint]."  Amend Compl. ¶¶ 94, 86, 87.

## II.     The CBA

In their motion for partial dismissal, the WPHG Defendants contend that the claims made by Plaintiffs who are union members are preempted by § 301 of the Labor Management Relations Act ("LMRA") because these plaintiffs are subject to a CBA.  The CBA states in relevant part:

ARTICLE 17: GRIEVANCE / ARBITRATION

The provisions of this Article shall be the exclusive method to be followed by the Union and the associates in the adjustment or settlement of all grievances and

disputes regarding the interpretation or application of this Agreement.  The Employer cannot file grievances.

. . . .

ARTICLE 27: PAID TIME OFF

This article is intended to provide associates time off (PTO) with pay for any reason including vacation, holidays, parent/teacher conferences, periods of low occupancy, and personal/family illness or emergencies.

Section 1:     Eligibility. All regular full-time associates are eligible for paid time off after three months continuous employment.

Section 2:     Accrual.  Accrual of PTO is determined by length of regular full time employment.  No PTO is accrued beyond a maximum of 272 hours (or 320 hours for associates with a length of service of ten years or more).

| Table of PTO Accrual | | |
|---|---|---|
| Length of Employment | Maximum PTO per Year | Hours accrued per pay period |
| More than 3 months, less than 1 year | 120 hours/15 days | 6.15 hours (x 19.51 pay periods) |
| More than 1 year, less than 5 years | 160 hours/20 days | 6.15 hours (x 26 pay periods) |
| More than 5 years, less than 10 years | 200 hours/25days | 7.69 hours (x 26 pay periods) |
| More than 10 years | 240 hours/30 days | 9.23 hours (x 26 pay periods) |

. . . .

Section 8:     Compensation for PTO.  Compensation for PTO hours will be paid at the associate's regular base rate, however not at less than minimum wage.  Compensation for PTO hours excludes all bonuses and overtime.  Associates who separate from employment or move to an employment status that is not eligible for PTO may request pay for the accrued, unused PTO hours at their regular base rate, however not at less than minimum wage.  The regular base rate excludes all bonuses and overtime.

6

. . . .

ARTICLE 29: HEALTH AND WELFARE

The Employer shall provide all bargaining unit associates with health, dental, and life insurance under the conditions set forth in a Blue Cross of California policy and a Guardian Life Insurance policy to take effect July 1, 2005; provided, however, that the Employer shall have no obligation to notify or bargain with the Union over changes in the plan which are made by the insurance carriers nor shall the Employer have any liability for such changes. Contributions for premium costs shall be paid as follows:

| Employer Contribution | Amount | Associate Contribution | Amount |
|---|---|---|---|
| Employee Only | $221.20 | Employee Only | $47.25 |
| Employee + Spouse | $366.37 | Employee + Spouse | $198.94 |
| Employee + Child | $320.53 | Employee + Child | $153.54 |
| Family | $534.89 | Family | $267.69 |

The Employer agrees that any increase in cost to health, dental, and life insurance will be negotiated but in no event will any increase in cost to the Employer exceed 5%.

. . . .

ARTICLE 38: ENTIRE AGREEMENT

. . . .

Section 2:    This Agreement represents the entire agreement between the parties and supersedes and nullifies all prior agreements, past practices, precedents, covenants and understandings both written and oral, except which may be appended and identified in side letters, or which may be the subject of official Employer policy.

. . . .

Section 4:    Associates shall abide by the terms and conditions of the Employer's handbook except as to the 401(k) provisions and except to the degree any particular provision may be in conflict with this Agreement. Such conflicting provision(s) alone, if any, shall be inapplicable to the unit associates employed on this property. All other terms of the Employer's handbook shall be fully applicable to unit associates.

7

ARTICLE 39: CONTRACT DURATION

This Agreement shall become effective as of July 1, 2005, and shall expire October 31, 2008. It shall automatically renew itself from year to year thereafter unless either party shall give written notice to the other party not less than sixty (60) days prior to expiration of the Agreement or extension thereof.

Entry 22-1 at 12, 20-21, 23, 24, 31.

### III.    Related Settlement

On May 5, 2010, the National Labor Relations Board ("NLRB") and International Union of Operating Engineers, Local 465, AFL-CIO ("the Union") entered into a settlement agreement with WPHG, WPHG-DHR, and DIP in a related matter. *See* Entry 147-1. The NLRB had filed unfair labor practice charges against WPHG, WPHG-DHR, and DIP for their failure to pay PTO to union members. These charges were settled by the aforementioned agreement. The settlement agreement provides that former DIP employees who were members of the applicable bargaining unit and were allegedly owed PTO, will be paid 80% of the PTO allegedly owed plus interest by WPHG-DHR. Entries 147 at 3 n.2; 146 at 4. The agreement states that it settles the allegations of the unfair labor practice charges, but "does not constitute a settlement of any other case(s) or matters." Entry 147-1 at 2. In addition, the agreement states that it is not "intended to be an admission of liability for payment of . . . lost earnings by either [DIP] or [WPHG-DHR], a wholly owned subsidiary of [WPHG]. . . ." *Id.* at 4.

## DISCUSSION

### I.    Plaintiffs' First Cause of Action: Whether the PTO Claims of Plaintiffs Covered by the CBA are Preempted by § 301 of the LMRA

Plaintiffs object to the Magistrate Judge's recommendation that the WPHG Defendants be granted partial dismissal of any PTO claims being asserted by Plaintiffs covered by the CBA.

8

Plaintiffs contend that the union members' claims are not preempted by § 301 of the LMRA because their claims are based upon: 1) an independent contract that did not change the terms of the CBA; and 2) an "inalienable state right to payment of wages." Entry 173 at 2, 4. Plaintiffs also contend that the Magistrate Judge's recommendation penalizes employees covered by the CBA for their partial recovery.

Section 301 of the LMRA states: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . ." 29 U.S.C. § 185(a).[4] To ensure uniform interpretation of CBAs and to protect the power of arbitrators, *see Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 219 (1985), § 301 has been found to "displace entirely any state cause of action for violation of contracts between an employer and a labor organization," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983)(internal quotation omitted). The substantive law that applies in § 301 cases "is federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 456 (1957).

Preemption under § 301 occurs only when resolution of a state law claim depends upon the meaning of the CBA, or when resolution of the state law claim is "inextricably intertwined with consideration of the terms of the labor contract." *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 773 (4th Cir. 1998)(citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988), and *Allis-Chalmers*, 471 U.S. at 213 (1985)). "[I]t is the legal character of a claim, as independent of rights under the [CBA] (and not whether a grievance arising from precisely the same set of facts

---

[4] State courts have concurrent jurisdiction over § 301 claims. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 n.2 (1988) (citing *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502 (1962)).

could be pursued) that decides whether a state cause of action may go forward." *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994)(internal citations and quotations omitted). Section 301 does not preempt state contract rights that are independent of a [CBA], *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396 (1987), or "nonnegotiable rights conferred on individual employees as a matter of state law," *Davis v. Bell Atlantic-West Virginia, Inc.*, 110 F.3d 245, 247-48 (4th Cir. 1997) (citing *Livadas*, 512 U.S. at 123).

A.    Whether The Employee Handbook and Pay Stubs of Plaintiffs Covered by the CBA Constitute Independent Contracts

Plaintiffs contend that the plaintiffs covered by the CBA have contracts that are independent of the CBA. Plaintiffs specifically contend that the employee handbook distributed by Defendants and Plaintiffs' pay stubs, which list accrued PTO, constitute independent employment contracts entitling them to PTO.

In *J.I. Case Co. v. NLRB*, 321 U.S. 332 (1944), the Supreme Court stated that individual contracts cannot conflict with the NLRB's duty of preventing unfair labor practices, and that "[w]herever private contracts conflict with [the NLRB's] functions, they obviously must yield or the [National Labor Relations Act ("NLRA")] would be reduced to a futility." *Id.* at 337. However, the Court stated also that individual contracts are not always excepted from the operation of CBAs. *Id.* at 339. Although the Court ruled that "[i]ndividual contracts cannot subtract from collective ones," it declined to determine whether individual contracts may add to collective-bargaining agreements. *Id.*

In *Caterpillar*, the Supreme Court recognized that "a plaintiff covered by a [CBA] is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a [CBA]." 482 U.S. at 396 (emphasis in original). In *Caterpillar*, several employees who were initially covered by a CBA, took new job positions that

10

were not covered by the CBA. *Id.* at 388. These employees were later downgraded to positions covered by the CBA and subsequently laid off when the employer's facility closed. *Id.* at 389. The plaintiffs contended that while serving in positions not covered by the CBA, they were assured that if the facility ever closed, they would be provided with employment opportunities at other facilities within the company. *Id.* The plaintiffs further contended that these promises created an employment agreement independent of the CBA. *Id.* Because the Court determined that the plaintiffs could assert rights independent of the CBA, the Court concluded that the plaintiffs' breach of contract claims were not preempted by § 301 of the NLRA. *Id.* at 396.

Two subsequent Fourth Circuit cases have applied the holding in *Caterpillar*. In *White v. Nat'l Steel Corp.*, 938 F.2d 474 (4th Cir. 1991), the plaintiffs, former union members, brought claims against their employer after the plaintiffs accepted management positions not covered by the CBA, relying on promises that if they were removed from their management positions, they could return to their former positions in the bargaining units with their accrued seniority intact. *Id.* at 477-78. The Fourth Circuit concluded that the plaintiffs' claims were not preempted because they were based upon individual employment contracts and the plaintiffs were "not relying on duties or promises contained in [the CBA]." *Id.* at 483. The Fourth Circuit reasoned that because the alleged duties arose from independent contracts completely separate from the CBA, there was no danger of inconsistent interpretation of the terms of the CBA or of circumventing commitments to arbitrate. *Id.* at 484. In *Marion v. Virginia Elec. & Power Co.*, 52 F.3d 86 (4th Cir. 1995), the Fourth Circuit found that a plaintiff's breach of contract claims against his employer were not preempted because the plaintiff, who was not a union member, was not covered by the CBA even though his oral contract borrowed certain provisions from the CBA. *Id.* at 88, 89.

11

The case before this court is distinguishable from *Caterpillar*, *White*, and *Marion*. In *Caterpillar* and *White*, the independent contract rights asserted were rights that were not addressed by the CBA. In *Marion*, the plaintiff was not covered by a CBA. In the case before the court, Plaintiffs are asserting allegedly independent contractual rights to PTO, but PTO is a subject covered under the provisions of the CBA. Entry 22-1 at 12. Permitting the assertion of independent contractual rights in this case would be inconsistent with the goals of § 301 preemption as set out by the Supreme Court in *Allis-Chalmers*, 471 U.S. at 211, 219: 1) to prevent the inconsistent interpretation of CBAs, and 2) to preserve the role of arbitration in the labor system. First, any treatment of the handbook and pay stubs as independent of the CBA would permit varying interpretations of the terms of the CBA. Second, permitting Plaintiffs to file suit pursuant to alleged contracts that mirror provisions of the CBA would allow the plaintiffs covered by the CBA to circumvent their agreement to arbitrate disputes regarding the interpretation or application of the CBA. The court therefore concludes that Plaintiffs who are covered by the CBA do not have an independent contractual right to PTO.

      B.    <u>Whether Plaintiffs Covered by the CBA Are Asserting a Claim for a Nonnegotiable State Law Right that Does Not Require Interpretation of the CBA</u>

Plaintiffs contend that their PTO claims are based upon inherent, inalienable state law rights, which exist independently of the CBA. Section "301 does not preempt 'nonnegotiable rights conferred on individual employees as a matter of state law.'" *Davis*, 110 F.3d at 247 (citing *Livadas*, 512 U.S. at 123). However, the Supreme Court has recognized that "a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a [CBA] for its application," leading to preemption. *Lingle*, 486 U.S. at 407 n.7.

12

In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), the Supreme Court held that an "employee's statutory right to a trial de novo under Title VII of the Civil Rights Act of 1964 is not foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a [CBA]." *Id.* at 1017-25. The Court reasoned that "Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." *Id.* at 48-49. Similarly, in *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), the Supreme Court held that an employee may bring an action alleging a violation of the minimum wage provisions of the Fair Labor Standards Act after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to a CBA. *Id.* at 729-30. The reason for this holding was that the principal congressional purpose in enacting the Fair Labor Standards Act was to provide minimum substantive guarantees to individual workers, which take precedence over conflicting provisions in a CBA. *Id.* at 727, 729, 740-41.

The Fourth Circuit has issued at least three opinions finding that the West Virginia Wage Payment and Collection Act is preempted by § 301 of the LMRA. In *Briggs v. Heinz*, 872 F.2d 416 (Table), 1989 WL 27483 (4th Cir. Mar. 17, 1989), the plaintiffs filed a grievance due to their employer's failure to pay for unused personal leave provided for in a CBA after the employer sold its facilities to another company. *Id.* at *1. The plaintiffs were awarded compensation in arbitration, but the arbitrator did not specify the amount of the award. *Id.* When the plaintiffs did not receive the wages to which they believed they were entitled, they filed suit under the West Virginia Wage Payment and Collection Act. *Id.* The Fourth Circuit ruled that the plaintiffs' claims were preempted by § 301 of the LRMA because the claims arose from a provision in the CBA providing for personal leave days. *Id.* at 1. The Fourth Circuit noted that West Virginia law did not create a right to be paid

13

for personal leave and that whether this right, created by the CBA, survived the sale of the facilities was a question for arbitration. *Id.* at 2. In *Barton v. Creasey Co. of Clarksburg*, 900 F.2d 249 (Table) 1990 WL 36773 (4th Cir. 1990), the Fourth Circuit affirmed the ruling of the district court that the plaintiffs' claims for unpaid vacation and severance pay were preempted by a CBA and therefore subject to removal to federal court. *Id.* at 1, 2. The Fourth Circuit reasoned that the plaintiffs' claims were not independent of the CBA because the West Virginia Wage Payment and Collection Act, while providing procedures for the collection of wrongfully withheld wages, did not grant any entitlements to pay or wages, and any right to recovery would require interpretation of the CBA. *Id.* at 2. *See also Arbogast v. CSX Corp.*, 831 F.2d 290 (Table), 1987 WL 38662 (4th Cir. 1987) (West Virginia Wage Payment Collection Act preempted because the CBA was the source of the plaintiffs' right to pay and the Act only authorized a penalty to nonpayment of wages after a right to wages was established). *Id.* at 1.

Plaintiffs cite *Livadas v. Bradshaw*, 512 U.S. 107 (1994), in support of their argument that they have nonnegotiable state rights to PTO. Entry 173 at 7. In *Livadas*, the Supreme Court held that federal law preempted the California Commissioner of Labor's policy of not enforcing § 203 of California's Labor Code on behalf of employees covered by CBAs with an arbitration clause. *Id.* at 110. The court reasoned that the Commissioner's policy abridged the exercise of union employees' rights under the NLRA. *Id.* The Court stressed that the Commissioner's policy presented union employees with the "unappetizing" choice of having their state law rights enforced or exercising the right to enter into a CBA. *Id.* The Court reasoned that the policy could not be reconciled with the policies behind federal labor law, which is "premised on the centrality of the right to bargain collectively and the desirability of resolving contract disputes through arbitration." *Id.* at 117. The

14

Commissioner defended his policy, claiming that it was compelled by § 301 of the LMRA, which the Commissioner argued, prevented interpretation of CBAs with arbitration clauses by the courts. *Id.* at 121. The Court disagreed, stating that both state and federal courts have jurisdiction over claims asserting breaches of CBAs, but that they must apply federal common law as opposed to state contract law to avoid "different and potentially inconsistent interpretations" of common terms in CBAs. *Id.* at 121-22. The Court then noted that the preemptive effect of § 301 had not been extended far enough to justify the Commissioner's policy. *Id.* at 122. The Court emphasized that § 301 does not preempt "nonnegotiable rights conferred on individual employees as a matter of state law" and that "it is the legal character of a claim, as 'independent' of rights under the [CBA] . . . (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state cause of action may go forward." *Id.* at 123 (internal citations omitted). Furthermore, the Court noted that when the meaning of the terms of the CBA is not in dispute, "the bare fact that a [CBA] will be consulted" would not lead to preemption. *Id.* at 123-24. The Court found that because there was no dispute over the amount of the penalty to which the plaintiff would be entitled under the Labor Code, a court would only need to "look to" the CBA to determine the rate of pay for the purpose of computing damages such that § 301 preemption did not apply. *Id.* at 124. Notably, the Court did not address whether California's Labor Code creates a nonnegotiable right that cannot be preempted by § 301. However, a logical extension of the Court's analysis is that, had the meaning of the CBA been in dispute, § 301 could have preempted the plaintiff's claims under the Labor Code. Accordingly, *Livadas* is not dispositive with regard to whether the South Carolina Payment of Wages Act creates a nonnegotiable right to the payment of wages.

15

Subsequent to the Supreme Court's ruling in *Livadas*, three circuits have addressed whether § 301 preempts state payment of wages claims. First, in *Antol v. Esposto*, 100 F.3d 1111 (3d Cir. 1996), the plaintiffs contended that their wage claims under the Pennsylvania Wage Payment and Collection Law were not preempted by § 301 of the LMRA because their claims were independent of the CBA and a court would only need to reference the CBA to calculate damages. *Id.* at 1115. The Third Circuit disagreed, ruling that the Pennsylvania Wage Payment and Collection Law did not create a right to compensation; and that the plaintiffs' claims for wages were based on the CBA and were, therefore, preempted by the LMRA and the NLRA. *Id.* at 1114, 1117. The Third Circuit noted that the district court properly found that the plaintiffs' entitlement to the claimed compensation was disputed and could not be discerned without interpreting the CBA. *Id.* at 1118.

Second, in *Baker v. Kingsley*, 387 F.3d 649 (7th Cir. 2004), the Seventh Circuit addressed the issue of whether the plaintiffs' claim under the Illinois Wage Act was preempted by § 301 of the LMRA. *Id.* at 657. The Seventh Circuit stated that "deciding whether an employer has honored its contract and complied with the Act, requires interpreting the contract, unless, perhaps, the particular contractual provision is so clear as to preclude all possible dispute over its meaning." *Id.* at 658 (internal quotation omitted). The Seventh Circuit specifically addressed the *Livadas* holding noting that it "applies only when the meaning of contract terms is not the subject of dispute." *Id.* at 658 (internal quotation omitted). Because the defendants disputed the plaintiffs' entitlement to the wages pursuant to the CBA, requiring the interpretation of this agreement, the Seventh Circuit ruled that the plaintiffs' claims under the Illinois Wage Act were preempted. *Id.* at 659.

Third, in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053 (9th Cir. 2007), the plaintiffs brought claims alleging violations of the California Business and Professions Code, California

16

Industrial Welfare Commission Wage Order, and California Labor Code based upon an employer's failure to compensate the plaintiffs for time spent traveling between a designated meeting point and a jobsite when the employer mandated the travel. *Id.* at 1055. The Ninth Circuit ruled that although the plaintiffs were covered by a CBA, their state law claims were not preempted because the right to be compensated for employer-mandated travel was recognized by the California Supreme Court and codified in a state regulation. *Id.* at 1060-61. The Ninth Circuit concluded that because the right to be compensated for employer-mandated travel existed independently of the CBA, *see* 8 CCR § 111605(a), and the court would only have to "look to" the CBA to determine each plaintiff's rate of pay for the purposes of calculating damages, the plaintiffs' claims were not preempted by § 301 of LMRA. *Id.* at 1060-61, 1071.

Plaintiffs rely on two South Carolina Supreme Court cases for the proposition that the South Carolina Payment of Wages Act is not preempted by § 301 of the NLRA. In *Kimbree v. Jolog Sportswear, Inc.*, 123 S.E.2d 524 (S.C. 1962), the Supreme Court of South Carolina determined that the plaintiffs' action for damages for the wrongful withholding of wages was not preempted by the NLRA. *Id.* at 526. The court stated that the payment of wages is a matter of compelling state interest, and that the plaintiffs' action did not conflict with federal jurisdiction because although the NLRA provides for back-pay, it does not provide a remedy for the tortious withholding of wages. *Id.* at 527. The Supreme Court of South Carolina found that it was not the intent of Congress to "oust state courts of all jurisdiction in matters involving the payment of wages to employees." *Id. Kimbree* was decided before the United States Supreme Court's rulings in *Franchise Tax Board* and *Allis-Chalmers*, indicating that the United States Supreme Court had not yet elucidated the current test for when § 301 preempts state law claims. *Kimbree* states that § 301 preemption, if it applied,

17

would preempt all claims for the tortious payment of wages. *Id.* The Supreme Court's rulings with regard to § 301 indicate that this is not the case. Instead, preemption only occurs in cases where the interpretation of a CBA is required.

In *Lewis v. Local 382, Internat'l Bhd. of Elec. Workers*, 518 S.E.2d 583 (S.C. 1999), the Supreme Court of South Carolina found that a union member's claim under the Right-to-Work Act was preempted by the LMRA because the claim was substantially dependent upon an analysis of the union's constitution. *Id.* at 585. In *Lewis*, the Supreme Court of South Carolina commented that the *Kimbree* decision was still good law because there was no conflict with federal jurisdiction in that case, but that *Lewis* did involve a conflict with federal law because the court would have been required to interpret the union's constitution without preemption. *Id.* at 586. Thus, the South Carolina Supreme Court interprets the § 301 preemption doctrine to apply only in cases in which there is a conflict with federal jurisdiction, such as a need to interpret a union's constitution or a CBA.

The court finds that the South Carolina Payment of Wages Act does not create an independent right to wages for accrued PTO. *See* S.C. Code Ann. §§ 41-10-10, *et. seq.* Instead, the South Carolina Payment of Wages Act creates a right to be paid wages due based upon an

employment contract.  *See id.*[5]  The contract is the source of the right to wages for PTO, not the

South Carolina statute.

Therefore, the issue is whether interpretation of the CBA is required to make a determination

with regard to Plaintiffs' right to recover claimed accrued PTO.  In *Lingle*, the Supreme Court

recognized that "[i]f a law applied to all state workers but required, at least in certain instances,

[CBA] interpretation, the application of the law in those instances would be pre-empted."  486 U.S.

---

[5] The South Carolina Payment of Wages Act states in relevant part:

"Wages" means all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract.

. . . .

Every employer shall notify each employee in writing at the time of hiring of the normal hours and wages agreed upon. . . .

. . . .

Every employer in the State shall pay all wages due. . . .

. . . .

When an employer separates an employee from the payroll for any reason, the employer shall pay all wages due to the employee. . . .

. . . .

In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow.

S.C. Code Ann. §§ 41-10-10, 41-10-30, 41-10-40, 41-10-50, and 41-10-80.   This language stands in stark contrast to the Fair Labor Standards Act (FLSA), which does create a nonnegotiable right to a minimum wage for work performed.  FLSA states:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: . . . $7.25 an hour beginning [July 24, 2009].

29 U.S.C. § 206(a)(1).

at 407 n.7. Examples of cases in which no interpretation of a CBA was necessary in order to determine a plaintiff's right to recover include: *Livadas*, 512 U.S. at 124 (the court only needed to "look to" the CBA to determine the rate of pay because there was no dispute as to the amount of the penalty in the CBA); *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 78-79 (1998) (claims for violations of the Americans with Disabilities Act of 1990 were not preempted by § 301 because interpretation of the CBA was not required and the claim was distinct from any right conferred by the CBA); *Lingle*, 486 U.S. at 401 (finding that an employee covered by a CBA that provides her with a contractual remedy for discharge without just cause may enforce her state-law remedy for retaliatory discharge because the elements of a retaliatory discharge claim involved purely factual questions about the conduct of the employee and the motivations of the employer, which did not require interpretation of the CBA); *Owen v. Carpenters' District Council*, 161 F.3d 767, 775 (4th Cir. 1998) (finding that a wrongful discharge claim did not require interpretation of a CBA because the claim involved purely factual questions concerning the employee's conduct and the conduct and motivation of the employer). *Cf. Allis-Chalmers Corp., v. Lueck*, 471 U.S. 202 (1985) (finding that a state law claim for bad faith handling of an insurance claim was preempted by a CBA that included insurance plan provisions because the right at issue was derived from the CBA and would require CBA interpretation).

In the case before the court, interpretation of the CBA would be necessary to any determination that Plaintiffs covered by the CBA are entitled to recover their claimed accrued PTO. First, there is a dispute over whether Plaintiffs are owed PTO. The WPHG Defendants deny that Plaintiffs were not paid accrued PTO to which they were entitled. *See* Answer to Amend. Compl.

Entry 24 at ¶ 35, 59; Amend Compl. Entry 20 ¶ 35, 59.[6]  Second, Plaintiffs admit that the language

in the handbook mirrors the language contained in the CBA.  Entry 34 at 7.[7]  This identical language

leads the court to conclude that any right to PTO held by Plaintiffs covered by the CBA stem from

the CBA.  Any other conclusion would be inconsistent with the goals behind § 301's preemption

doctrine as set out by the Supreme Court in *Allis-Chalmers*, 471 U.S. at 211, 219: 1) to prevent the

inconsistent interpretation of CBAs, and 2) to preserve the role of arbitration in the labor system.

This is because treating the handbooks as independent contracts would permit inconsistent

interpretations of the terms of the CBA, and would allow Plaintiffs covered by the CBA to

circumvent their agreement to arbitrate disputes over CBA provisions.  *Allis-Chalmers*, 471 U.S. at

211, 219.  In addition, the language of the PTO provision in the CBA allows employees who separate

from employment to "request" their accrued, unused PTO, indicating that any right to PTO is subject

to the court's interpretation of the language in the PTO provision.  *See* Entry 22-1 at 23.  Because

a determination of whether Plaintiff union members are entitled to PTO requires interpretation and

not mere reference to the CBA, the court concludes that § 301 of the LMRA preempts the PTO

claims of all Plaintiffs covered by the CBA.[8]

---

[6] Although WPHG-DHR, WPHG and DIP settled with plaintiff union members in the NLRB action,
these defendants did not admit liability for the alleged lost earnings at issue.  *See* Entry 146-1 at 1.

[7] The CBA and handbook both state: "Associates who separate from employment or move to an
employment status that is not eligible for PTO may request pay for the accrued, unused PTO hours at their regular
base rate, however, not at less than minimum wage.  The regular base rate excludes all bonuses and overtime."
Entries 135 at 23; 28-5 at 26 (using the word "employees" instead of "associates").

[8] Plaintiffs argue that preemption in this case would allow union members to be treated less favorably
than nonunion members.  The Third Circuit addressed this same argument in Antol v. Esposto, 100 F.3d 1111,
1121 (3d Cir. 1996) stating:

     Although that argument has some surface appeal, it fails to acknowledge the existence of
     compensating factors when federal law governs employment. . . . [CBAs] frequently contain
     provisions for favorable working conditions.  A key benefit union status often confers on

II.     **Plaintiffs' Second Cause of Action: Whether Plaintiffs' Claim for Benefits Must be Dismissed for Failure to Implead the Plan or Allege a Basis for Imposing Liability Against WPHG**

The WPHG Defendants object to the Magistrate Judge's finding that the stipulation of dismissal filed on October 8, 2010, which provided that Plaintiffs' second and third causes of action will proceed solely against WPHG and the pro se Defendants, mooted the WPHG Defendants' argument that Plaintiffs' second cause of action should be dismissed because Plaintiffs failed to implead the group health plan or allege any basis for imposing liability on WPHG as to the claim for benefits. The WPHG Defendants therefore, continue to contend, as they did in their motion for partial dismissal, that Plaintiffs' failure to implead the health plan or to allege any basis of imposing liability for benefits on WPHG requires the dismissal of Plaintiffs' second cause of action. The WPHG Defendants contend that "[a] person other than the plan - including a plan fiduciary - is not

_____

workers is the presence of a "just cause" standard for discharge or discipline. Even more important, the grievance and arbitration process, a standard feature of almost all [CBAs], offers union members a means for quick and inexpensive resolution of contract disputes. Permitting employees to sue in state courts in order to bypass arbitration not only dilutes its effectiveness, but calls into question its very existence. Non-exclusivity of arbitration would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.

Plaintiffs also argue that the NLRB settlement does not fully resolve any claims by union members for PTO because: 1) the plaintiffs covered by the CBA only recovered 80% of their PTO; 2) the settlement did not address other actions; and 3) Plaintiffs' state law claims provide a different remedy because Plaintiffs could be awarded treble damages under the South Carolina Payment of Wages Act. The court disagrees. The fact that Plaintiffs covered by the CBA submitted their PTO claims to arbitration and entered into a settlement indicates that these claims have been completely resolved. Plaintiffs covered by the CBA cannot now be permitted to circumvent their agreement to arbitrate disputes over CBA terms by bringing suit in federal court. *See* Entry 22-1 at 12. Indeed, the submission of the PTO claims of Plaintiffs covered by the CBA to arbitration is indicative that any right to PTO is rooted in the CBA. Although it is correct that the settlement was not intended to cover "other actions," Plaintiffs covered by the CBA cannot be included in any "other action" seeking PTO because they have settled their PTO claims. In addition, as discussed in detail above, any claims for PTO by Plaintiffs covered by the CBA pursuant to the South Carolina Payment of Wages Act would require interpretation of the CBA and are therefore preempted.

22

liable for a money judgment in an action to recover benefits unless such person's liability is established on some other basis." Entry 172 at 4.

Title 29, United States Code, Section 1132(a)(1)(B) (also ERISA § 502(a)(1)(B)) permits ERISA plan participants and beneficiaries to file civil actions "to recover benefits due . . . under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." *Id.* Section 1132(d)(2) provides: "Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." *Id.*

There is a circuit split on the issue of whether a plan fiduciary can be a defendant in an ERISA action for benefits. Several circuits have allowed employees to proceed against parties other than the plan for the denial of benefits when the party acted as a plan fiduciary. *See Musmeci v. Schwegmann Giant Super Mkts, Inc.*, 332 F.3d 339, 351 (5th Cir. 2003) (citing § 502(d)(2) and noting that "other Circuits have allowed employees to maintain actions against their employers for the denial of benefits. . . ."); *Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (allowing an ERISA claim against an employer and the benefit plan to go forward because the employer was also the plan administrator); *Layes v. Mead Corp.*, 132 F.3d 1246, 1249 (8th Cir. 1998) (holding that a party that was not the plan administrator was not a proper defendant in a claim for benefits pursuant to ERISA); *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan"); *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994) (noting that ERISA permits suits to recover benefits against the plan as an entity and against

23

the fiduciary of the plan, and finding that a plan administrator is such a fiduciary); *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 (9th Cir. 1993) ("The beneficiary of an ERISA plan may bring a civil action against a plan administrator 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,'" quoting 29 U.S.C. § 1132(a)(2)); *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits"). However, the Second Circuit has found that suits to recover benefits can only be brought against the plan. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) ("'ERISA permits suits to recover benefits only against the Plan as an entity . . . .'" quoting *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985)).[9]  Therefore, of the circuits that have addressed this issue, the majority of circuits allow suits against plan fiduciaries, and only the Second Circuit has maintained the position that suits for benefits cannot be asserted against parties other than the plan.

The Fourth Circuit has not addressed the issue of whether a plan administrator can be a defendant in an ERISA action for benefits under § 1132(a)(1)(B).  However, in *Gluth v. Wal-Mart*

---

[9] The Seventh and Ninth Circuits previously held the same position as the Second Circuit, but in subsequent cases appear to have reversed their positions to allow suits for benefits against plan fiduciaries. *Compare Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997) ("It is true that ERISA permits suits to recover benefits only against the plan as an entity[.]"), *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) ("'ERISA permits suits to recover benefits only against the Plan as an entity . . . .'" quoting *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985) and citing 29 U.S.C. § 1132(d)(2), to hold that a suit for benefits against an employee of the ERISA plan, in her official capacity, could not be maintained), *and Gelardi*, 761 F.2d at 1324-25 (9th Cir. 1985) ("ERISA permits suits to recover benefits only against the Plan as an entity . . . and suits for breach of fiduciary duty only against the fiduciary."), *with Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (allowing an ERISA claim against an employer and the benefit plan to go forward because the employer was also the plan administrator), *and Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1471 (9th Cir. 1993) ("The beneficiary of an ERISA plan may bring a civil action against a plan administrator 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan,'" quoting 29 U.S.C. § 1132(a)(2)).

*Stores, Inc.*, No. 96-1307, 1997 WL 368625, at *6 (4th Cir. July 3, 1997), the Fourth Circuit reversed a district court's decision to grant an ERISA claimant leave to amend his complaint because the additional party had no control over the administration of the employee benefit plan. *Id.* at *6, n.8 (citing *Gelardi*, 761 F.2d at 1324-25 (ERISA permits suits to recover benefits only against the employee benefits plan as an entity); *Daniel*, 839 F.2d at 266 (unless an employer is shown to control administration of an employee benefit plan, it is not a proper defendant in an ERISA action seeking benefits; rather, the plan is the proper party)). It is unclear from *Gluth* whether the Fourth Circuit would allow suits for benefits against an employer controlling administration of the plan.

At least two district courts in this circuit have interpreted *Gluth* to mean that fiduciaries who control the administration of a plan are proper defendants to an ERISA action for benefits. *See Howell v. Truck Drivers & Helpers Local Union No. 355*, No. WDQ-07-0989, 2008 WL 6742575, at *3 (D. Md. April 19, 2008) ("The proper defendants in an ERISA benefits action are the pension plan and fiduciaries who control the administration of the plan."); *McRae v. Rogosin Converters, Inc.*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004) (The Fourth Circuit "appears to be aligned with those circuits that permit a plaintiff to bring an action to recover benefits under Section 1132(a)(1)(B) against the pension plan itself as an entity and any fiduciaries who control the administration of the pension plan.") (finding that even when the plan is not named as a defendant a fiduciary may still be named as a defendant); *Rayburn v. Health Care Plan of Carolina Sales, Inc.*, No. Civ. 1:00CV00458, 2000 WL 1456290, at *2 (M.D.N.C. Sept. 1, 2000) (finding that an action to recover benefits under § 1132(a)(1)(B) may be brought against the plan itself and any plan fiduciaries).

25

Plaintiffs' second cause of action seeks plan benefits pursuant to ERISA, attorney's fees, penalties, and COBRA rights and penalties.  *See* Amend. Compl. ¶ 80.  The October 8, 2010 stipulation, agreed upon by Plaintiffs, WPHG, WPHG-DHR, and Schultze states:

> Based upon the representation of Defendant West Paces Hotel Group, LLC that it was the administrator for the health benefits plan at issue in this action, Plaintiff and Intervenor Tracy Torrise hereby dismiss Defendants WPHG Daufuski Human Resources, LLC and Horst H. Schultze from their ERISA claims set forth in counts two and three of the amended complaint.

> Therefore, the claims of Plaintiff and Intervenor Tracy Torrise set forth in counts two and three of the Amended Complaint are dismissed and ended with prejudice as to the following Defendants only: WPHG Daufanskie Human Resources, LLC; and Horst H. Schultze.

Entry 165 at 2.  This language does not moot the WPHG Defendants' contention that Plaintiffs' second cause of action should be dismissed on the grounds that Plaintiffs failed to implead the Group Health Plan or allege any basis for imposing liability on WPHG as to the claim for benefits. The majority of circuits allow ERISA benefits claims against plan fiduciaries. WPHG admits that it is the plan administrator.  Moreover, Plaintiffs allege that Defendants, including WPHG, were "plan administrators and/or fiduciaries" who withheld premiums from their paychecks, but did not pay these premiums to the health plan.  *See* Amend. Compl. ¶¶ 70-73, 79.  Plaintiffs may proceed with their claims for benefits against WPHG because WPHG is the plan administrator.[10]  The WPHG

---

[10] A person is a fiduciary for the purposes of ERISA "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).  The Fourth Circuit has held that where "an employer is entrusted with employee funds for remittance to a claims administrator, along with any employer contributions, the employer is acting in a fiduciary capacity under ERISA." *Phelps v. C.T. Enter., Inc.*, 394 F.3d 213, 219 (4th Cir. 2005) (citing *Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Virginia*, 867 F. Supp. 398, 405 (E.D. Va. 1994)).

Defendants' motion to dismiss Plaintiffs' second cause of action due to Plaintiffs' failure to implead the health plan is denied.

### III.  Plaintiffs' Third Cause of Action: Whether the Court Should Hold in Abeyance Pending Discovery a Ruling on Defendant's Motion to Dismiss Plaintiffs' Breach of Fiduciary Duty Claim

The WPHG Defendants request that the court hold in abeyance its ruling on whether Plaintiffs' allegation that WPHG failed to pay premium contributions to the health plan is sufficient to overcome WPHG's Motion to Dismiss Plaintiffs' third cause of action for breach of fiduciary duty under ERISA until Defendant conducts discovery on the issue of who controlled the funds withheld from Plaintiffs' paychecks. The WPHG Defendants contend that the "Amended Complaint is devoid of any allegation that WPHG exercised control over employee premium contributions." Entry 172 at 6.

All that is required at the dismissal stage is that Plaintiffs' "complaint [] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). The court "need not accept the [plaintiff's] legal conclusions drawn from the facts," nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006).

The elements of a claim for breach of fiduciary duty under ERISA are: (1) that the defendant was a fiduciary of the ERISA plan; (2) that the defendant breached its fiduciary responsibilities under

the plan; and (3) that the participant is in need of injunctive or "other appropriate equitable relief" to remedy the breach.  *Blair v. Young Phillips Corp.*, 235 F.Supp.2d 465, 470 (M.D.N.C. 2002) (citing *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379-80 (4th Cir. 2001)).

In the amended complaint, Plaintiffs allege that Defendants were plan fiduciaries.  Amend. Compl. ¶¶ 79, 82, and 83.  Plaintiffs allege that: 1) Defendants deducted health insurance premiums from Plaintiffs' pay checks, but did not pay the deducted premiums to the plan in November and December 2008, Amend. Compl.  ¶¶ 70, 71, and 84; and 2) "Defendants failed to notice or provide COBRA rights/benefits to the Plaintiffs,"  Amend. Compl. ¶¶ 78. and 84.  Plaintiffs contend that they are entitled to "judgment, including attorney['s] fees, penalties, and any other available remedy."  Amend. Compl. ¶ 84.  Plaintiffs allegations are sufficient to state a claim for relief that is plausible on its face.  Because Plaintiffs have stated a proper claim for breach of fiduciary duty, the WPHG Defendants' request that they be permitted to conduct discovery to prove that WPHG did not exercise control over the withheld premiums prior to the court's ruling on the motion to dismiss is denied.

IV.     **Whether Plaintiffs' Second and Third Causes of Action are Preempted by the NLRA or § 301 of the LMRA**

The Magistrate Judge did not address the WPHG Defendants' argument that the ERISA and COBRA claims set out in the second and third causes of action in the amended complaint are preempted.  *See* Entry 135 at 5-9; Entry 122 at 9.  While the WPHG Defendants did not object to the Magistrate Judge's failure to address this issue the court finds it necessary to do so prior to addressing Plaintiffs' motion for class certification.  The WPHG Defendants have not cited any

specific case law in support of their argument that an ERISA claim can be preempted by either the NLRA or § 301 of the LMRA.

A.     NRLA Preemption

In *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959), the Supreme Court held that "[w]hen an activity is arguably subject to [§] 7 or [§] 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Id.* at 245. The Supreme Court explained that its "concern [wa]s with delimiting areas of conduct which must be free from state regulation if national [labor] policy is to be left unhampered." *Id.* at 246.

In *Lupiani v. Wal-Mart Stores, Inc.*, 435 F.3d 842 (8th Cir. 2006), the Eighth Circuit recently addressed the issue of whether a plaintiff's ERISA claims were preempted because the basis for the plaintiff's claims fell under sections 7 and 8 of the NLRA. In *Lupiani*, the Eighth Circuit explained that the NLRA "preempts a cause of action that seeks relief for conduct that is protected or prohibited by the Act," *Id.* at 845 (citing *Garmon*, 359 U.S. 236) and that *Garmon* preemption, which is derived from the Supremacy Clause of the United States Constitution, is primarily concerned with conflicts between federal labor policy and state laws. *Id.* at 846. Because any conflict between NLRA and ERISA is between two federal statutes, the Eighth Circuit explained, the Supremacy Clause was likely not implicated. The Eighth Circuit ultimately determined that it did not need to decide this issue because the plaintiff's ERISA claims were not inextricably intertwined with the NLRA and the court could decide the ERISA claims without relying on substantive labor law. *Id.* at 846.

29

The Supreme Court and several circuit courts have suggested that *Garmon* preemption is not implicated when the NLRA is in conflict with another federal statute. *See Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 75-76 (1989) (federal court has jurisdiction where the conflict is between a fair representation claim and the Act); *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 235-38 (1971) (federal court has jurisdiction where the conflict is between Labor-Management Reporting and Disclosures Act and the Act); *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 754-57 (9th Cir. 1997) (holding that when the conflict is between the NLRA and a federal statute, there the ADA, *Garmon* preemption is inapplicable); *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1447 (5th Cir. 1992) (federal court has jurisdiction where the conflict is between the ADEA and the Act) *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 948 F.2d 98, 105 (2d Cir. 1991) ("where federal laws and policies other than the NLRA are implicated, the *Garmon* rule is frequently considered inapplicable"); *United States v. Boffa*, 688 F.2d 919, 931-33 (3d Cir. 1982) (finding that *Garmon* does not preempt a mail fraud prosecution).

Three district court cases also provide guidance. Most recently, in *Teamsters v. Local No. 120 v. Marathon Petroleum Co, LLC*, Civ. No. 06-3431 (PAM/JSM), 2006 WL 2971667 (D. Minn. Aug 29, 2006), the District Court for the District of Minnesota ruled that the plaintiffs' ERISA and COBRA claims were not preempted by the NLRA because the alleged violations existed independently of any unfair labor practice charge. *Id.* at 3. As the court stated:

> Plaintiffs do not seek to have the Court decide matters within the purview of the NLRA; they are suing for substantive rights guaranteed them by ERISA and COBRA. That Defendants' actions may also violate the NLRA is of no moment. The Court need not look to the NLRA to decide Plaintiffs' claims.

30

*Id.* at 4.  In *Central States, Se. and Sw. Areas Pension Fund v. Joe McClelland, Inc.*, No. 92 C 3514, 1993 WL 18979 (N.D. Ill. Jan 28, 1993), the district court determined that an ERISA claim was not preempted by the NLRA because the plaintiff did not alleged an unfair labor practice and was asserting independent rights under ERISA.  *Id.* at 3.  In *United Food & Commercial Workers Local 204 v. Harris-Teeter Super Mkts, Inc.*, 716 F. Supp. 1551 (W.D.N.C. 1989), the district court for the Western District of North Carolina found that the plaintiffs' claims were not preempted by the NLRA because the plaintiffs were only pursuing their independent rights and remedies under ERISA. *Id.* at 1557-58.

The record does not reveal that any unfair labor practice charge has been filed against any of Defendants related to the ERISA and COBRA violations alleged in the Amended Complaint. Because Plaintiffs do not invoke the NLRA, but seek only to assert their independent rights under ERISA, the court finds that Plaintiffs' second and third causes of action are not preempted by the NRLA.

    B.    <u>LMRA Preemption</u>

The WPHG Defendants contend that Plaintiffs' ERISA and COBRA claims are preempted under § 301 of the LMRA because any benefits related obligations are covered by the CBA.  Entry 122 at 9.  As was noted in detail above, § 301 has been found to "displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd.*, 463 U.S. at 23.  Preemption under § 301 occurs only when resolution of a state law claim depends upon the meaning of the CBA, or when resolution of the state law claim is "inextricably intertwined with consideration of the terms of the labor contract." *Owen*, 161 F.3d at 773 (citing *Lingle*, 486 U.S. at 405-06 and *Allis-Chalmers*, 471 U.S. at 213 (1985)).

At least two district courts have found that § 301 does not preempt ERISA claims because ERISA is a federal statute and § 301 preemption only applies to state statutes. *See Almonte v. Gen. Motors Corp.*, No. 95 CIV. 5173 (KTD), 1997 WL 363815, *2 (E.D.N.Y. June 30, 1997) ("Although section 301 preempts state-law causes of action, requiring that such claims arising in an employment relationship governed by a [CBA] be exhausted through arbitration, 'there is no authority for the proposition that section 301 preempts federal causes of action, such as plaintiff['s] ERISA claim.'") (quoting *Scotto v. Brink's Inc.*, 751 F. Supp. 335, 339 (S.D.N.Y.1990)); *Scotto*, 751 F. Supp. at 339. However, some courts have based their determinations of whether ERISA claims are preempted by § 301 by determining whether the ERISA claims require interpretation of the CBA. *United States v. Palumbo Bros., Inc.*, 145 F.3d 850, 873-76 (7th Cir. 1998)(ERISA claim not preempted by § 301 when ERISA claim could be decided without making the CBA the subject of the dispute); *Adamczyk v. Lever Bros., Co.*, 33 F. Supp. 2d 679 (1998) (ERISA claims not preempted when the labor agreement was only tangentially related to plaintiffs' claims); *Franks v. O'Connor Corp.*, 1992 WL 301266 *5 (E.D. Pa. Oct. 16, 1992) (ERISA claim preempted because it required analysis of a CBA).

The court finds that because Plaintiffs' second and third causes of action are not state causes of action, these causes of action are not preempted by § 301 of the LMRA. In addition, it does not appear that Plaintiffs' ERISA claims require the interpretation of the CBA. First, Plaintiffs' claim that Defendants improperly handled withheld premiums is derived directly from 29 U.S.C. § 1132(a)(1) and at most requires mere reference to the CBA to determine the contribution amounts that should have been paid to the health plan. Second, Plaintiffs' claim that Defendants failed to send out timely COBRA notices comes directly from 29 U.S.C. § 1132(a)(1)(A) and (c)(1). Third, Plaintiffs' breach of fiduciary duty claim is created by § 1132(a)(2). Although Article 29 of the

CBA gives Plaintiffs covered by the CBA a right to health insurance and details the premium contribution amounts for both the employer and the employee, Plaintiffs need not rely on the CBA to show that Defendants were obligated to pay withheld premiums to United HealthCare or send out COBRA notices.

**V.    Class Certification**

     A.    <u>Motion to Amend</u>

The Magistrate Judge did not rule on Plaintiffs' motion to amend the amended complaint to "comport with the class members set forth in the motion to certify the benefits class." Entry 102 at 2. The WPHG Defendants oppose this motion as being procedurally improper and presented in a way that prevents the WPHG Defendants from responding properly.

Generally speaking, courts must freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, if an amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile, a court may deny a motion to amend. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 391 (4th Cir. 2008). The court concludes that Plaintiffs' motion to amend would not prejudice the WPHG Defendants because the WPHG Defendants have already briefed the class certification issue with regard to the benefits class. In addition, Plaintiffs' motion does not appear to be in bad faith, and is not patently futile. Granting Plaintiffs' motion to amend will serve the ends of justice because it will allow Plaintiffs to have potentially meritorious claims heard by the court. Plaintiffs' motion to amend their amended complaint to comport with the class members set forth in its motion to certify the benefits class is therefore granted.

B.     Discovery Prior to Class Certification

Plaintiffs object to the Magistrate Judge's recommendation that the pending class certification motion be dismissed without prejudice to allow for discovery and re-briefing of the class certification issues. Plaintiffs contend that their motion for the certification of two classes should be granted because Plaintiffs have shown that all requirements of Rule 23 have been satisfied for both classes. Plaintiffs further contend that discovery is not necessary and that Plaintiffs, in fact, offered to provide the WPHG Defendants with discovery, but the WPHG Defendants were unable or unwilling to articulate what they needed that they did not already have in their possession.

A district court may permit discovery to aid in its determination of whether a class should be certified. *Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976) (courts may and often do permit discovery prior to class certification); *see also Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365-66 (4th Cir. 2004) ("[S]ometimes it may be necessary for the [district] court to probe behind the pleadings before coming to rest on the certification question."). The court will analyze Plaintiffs' motion for class certification, seeking to certify two classes, to determine whether discovery is appropriate.

1.     *Class Certification Requirements*

In initially determining the appropriateness of certification, courts should consider the definition of the class. *Cuming v. South Carolina Lottery Comm'n*, Civil Action No. 3:05-3608, 2008 WL 906705, at *1 (D.S.C. Mar. 31, 2008) (citing *Kirkman v. North Carolina R.R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004)). "Although not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.'" *Id.* citing 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1760 (2d.

34

Ed. 1986 & Supp. 2007)).   If a class description is not "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member," a class should not be certified.  *Id.*  "The proposed class definition must not depend on subjective criteria or the merits of the case or require an extensive factual inquiry to determine who is a class member." *Id.* (citing *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 353 (W.D. Wis. 2000)). "Where the practical issue of identifying class members is overly problematic, the court should consider that the administrative burdens of certification may outweigh the efficiencies expected in a class action." *Id.* (citing *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D. Pa. 2000)).

Once an adequate class definition is set forth, the moving party must meet the requirements of Federal Rule of Civil Procedure 23 to have a class certified.  Rule 23 establishes a two part test for class action certification: the action must satisfy the four subparts of Rule 23(a), as well as the additional requirements of either Rule 23(b)(1), 23(b)(2) or 23(b)(3).  *See* Fed. R. Civ. P. 23(b).  The party seeking class certification bears the burden of establishing the requirements of Rule 23.  *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989).

Pursuant to Fed. R. Civ. P. 23(a), a class action may be maintained if:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) "is similar to but 'more stringent' than the commonality requirement of Rule 23(a)." *Thorn*, 445 F.3d at 319 (4th Cir. 2006) (quoting *Lienhart v. Dryvit Sys.*, 255 F.3d 138, 146 n. 4 (4th Cir. 2001)).  Actions brought pursuant to Rule 23(b)(3) must meet two requirements, "predominance" and "superiority."   "The predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Cuming*, 2008

35

WL 906705, at *5 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The "predominance" requirement of Rule 23(b)(3) does not demand that every single issue in the case be common to all the class members, but only that there are substantial common issues which "predominate" over the individual issues. 3B MOORE AND KENNEDY, MOORE'S FEDERAL PRACTICE ¶ 23.06-1 at 23-159, 160. The superiority inquiry tests whether a class action is "superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Courts have "wide discretion in deciding whether or not to certify a proposed class." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993) (citing *A.H. Robins*, 880 F.2d at 728-29). In evaluating a motion to certify a class, a court should accept the allegations in the pleadings as true, but should also go beyond the pleadings to the extent necessary to understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of whether certification is appropriate. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Decisions on class certification should not depend on the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974).

2.   *PTO Class*

Plaintiffs seek certification of a class defined as: "Employees of Daufuskie Island Spa and Resort terminated in the months of October 2008 - January 2009 who were not paid their accrued Paid Time Off ('PTO'), excluding any Defendants." Entry 21-1 at 7. The WPHG Defendants contend that Plaintiffs' request to certify the class is premature and that discovery is necessary to determine whether class certification is appropriate. The WPHG Defendants seek discovery on the following issues: 1) whether some Plaintiffs who are not covered by the CBA have been paid their PTO; 2) whether the WPHG Defendants owe PTO to employees who carried over their employment

36

to 2009 with DIP; 3) whether the WPHG Defendants had any type of joint employment agreement that would mean they are not liable for PTO; 4) who was Plaintiffs' employer; 5) during what period of time; 6) where the obligation of PTO arises; and 7) whether certain members of the putative class who may have been involved in the decision not to pay PTO have any liability for the claims in this case. Plaintiffs contend that discovery is not necessary because all of the facts necessary to certify the class are already before the court. Plaintiffs also contend that because the WPHG Defendants are the employers, any necessary documents are already in their possession.

### 3. *Benefits Class*

Plaintiffs also seek certification of a class defined as: "Employees of Daufuskie Island Resort and Breathe Spa (the 'Resort') who were insured under the Resort's employee health insurance policy as of August 1, 2008 (the 'Benefits Class')." Entry 102 at 4. The WPHG Defendants contend that Plaintiffs' request is premature and that discovery is necessary to determine whether class certification is appropriate. The WPHG Defendants seek discovery on the following issues: 1) whether the proposed benefits class meets the numerosity requirement; and 2) whether certain members of the putative class who may have been involved in the decision not to pay premiums to the healthcare provider or to afford COBRA rights and benefits. Plaintiffs contend that discovery is not necessary because all of the facts necessary to certify the class are already before the court. Plaintiffs also contend that because the WPHG Defendants are the employers, any necessary documents are already in the WPHG Defendants' possession.

### 4. *Conclusion on Discovery*

After thoroughly reviewing the briefs of the parties, the court grants in part Defendants' motion for limited discovery. Plaintiffs' motion for class certification (Entry 102) is denied without

prejudice and with leave to re-file. Defendants are permitted to conduct discovery only on the following issues: 1) the number of putative class members in the proposed PTO class who are not covered by the CBA; 2) whether any of the remaining members of the proposed PTO class received their PTO prior to this case being filed; and 3) the number of putative class members in the proposed benefits class. The parties are directed to submit a proposed amended scheduling order including a schedule for discovery on the above-listed issues within ten (10) days of the entry of this order.

**VI.    Remainder of Report and Recommendation**

No other objections to the Report and Recommendation have been made. Nevertheless, the court has conducted a *de novo* review of the issues and finds no clear error on the face of the record. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

**VII.   Interlocutory Appeal**

Plaintiffs have requested that if the court: 1) grants the WPHG Defendants' motion to partially dismiss the PTO claims of those Plaintiffs covered by CBA; 2) denies Plaintiffs' motion for class certification; or 3) dismisses Plaintiffs' ERISA/COBRA claims, Plaintiffs be granted an interlocutory appeal on these issues. The WPHG Defendants oppose the request for interlocutory appeal because it will cause unnecessary delay of the case.

"Non-final orders or decrees are not appealable as a matter of right;" interlocutory appeal is an extraordinary remedy. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 474 (1978) (citing The Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b)); *Fannin v. CSX Transp., Inc., et al.*, 873

38

F.2d 1438, 1989 WL 42583 (4th Cir. Apr. 26, 1989) (unpublished) (citing *Tidewater Oil Co. v. United States*, 409 U.S. 151, 167 (1972)). To receive permission to appeal an interlocutory decision, the appellant must demonstrate "that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *KPMG Peat Marwick, L.L.P., v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74 (E.D. Va. 2000) (citing *Coopers & Lybrand*, 437 U.S. at 475 (1978)).

A district court judge may, in its discretion, certify a question for interlocutory appeal where 1) the order "involves a controlling question of law"; 2) there is "substantial ground for difference of opinion"; and 3) immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995); *see also Fannin v. CSX Transp.*, 1989 WL 42583, at *2; *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 741 (D. Md. 2003). All three elements must be satisfied for certification. *Id.*; *Lizarbe v. Rondon*, Civil No. PJM 07-1809, 2009 WL 2487083 (D. Md. Aug. 12, 2009). The Fourth Circuit has stated that interlocutory appeals "should be used sparingly and thus that [the] requirements must be strictly construed." *Lizarbe,* 2009 WL 2487083; *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir.1989).

Because the court is permitting Plaintiffs to re-file their motion for class certification and is not dismissing Plaintiffs' ERISA/COBRA claims, there is no need for the court to grant Plaintiffs an interlocutory appeal on these issues. Should the court later determine that class certification is inappropriate, it will consider the issue of interlocutory appeal at that time.

In addition, the court denies Plaintiffs' motion for interlocutory appeal of the dismissal of the PTO claims of Plaintiffs covered by the CBA because the requirements for an interlocutory appeal

have not been met. First, the dismissal of the PTO claims of Plaintiffs covered by the CBA does not involve a controlling question of law. A question of law is usually considered to be controlling within the meaning of § 1292(b) if the case would have ended had the district court ruled in the opposite way. *City of Charleston v. Hotels.com*, 586 F. Supp. 2d 538 (D.S.C. 2008) (citing *Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990)). The Fourth Circuit has stated that "[c]ertainly the kind of question best adapted to discretionary interlocutory review is a narrow question of *pure law* whose resolution will be *completely dispositive* of the litigation, either as a legal or practical matter, whichever way it goes." *Fannin*, 1989 WL 42583, at *5 (emphasis added); *KPMG Peat Marwick, L.L.P*, 250 B.R. at 78. The issue of whether the PTO claims of Plaintiffs covered by the CBA are preempted is a mixed question of law and fact requiring the application of the facts of this case to controlling law. Second, the interlocutory appeal of this issue would not materially advance the litigation. Generally speaking, this requirement is met when the resolution of a controlling legal question would serve to "avoid a trial or otherwise substantially shorten the litigation." *The Clark Constr. Group, Inc. v. Allglass Sys., Inc.*, No. Civ. A. DKC 2002-1590, 2005 WL 736606, at *4 (D. Md. March 30, 2005) (citing 16 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3930, at 432 (2nd ed. 1996)). A court of appeals decision allowing the PTO claims of Plaintiffs covered by the CBA to proceed would not allow the court to avoid trial or substantially shorten the litigation. Plaintiffs' motion for an interlocutory appeal is denied.

## CONCLUSION

The WPHG Defendants' motion to dismiss (Entry 135) is **granted in part and denied in part**. The WPHG Defendants' motion to dismiss the PTO claims of Plaintiffs covered by the CBA is granted because these claims are preempted by § 301 of the LMRA. The PTO claims of Plaintiffs covered by the CBA are therefore dismissed with prejudice. The WPHG Defendants' motion to dismiss Plaintiffs' second and third causes of action is denied.

Plaintiff's motion to amend the amended complaint to "comport with the class members set forth in the motion to certify the benefits class" is **granted**. *See* Entry 102 at 2. Plaintiffs' motion for class certification (Entry 102) is **denied without prejudice and with leave to re-file subsequent to discovery** on the following issues: 1) approximately how many putative class members remain eligible for membership in the proposed PTO class because they are not covered by the CBA; 2) whether any of the remaining members of the proposed PTO class received their PTO prior to this case being filed; and 3) the number of putative class members in the proposed benefits class. The parties are directed to submit a proposed amended scheduling order including a schedule for discovery on the above-listed issues within ten (10) days of the entry of this order. Plaintiffs' motion for interlocutory appeal (Entry 173 at 15) is **denied**.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour
The Honorable Margaret B. Seymour
United States District Judge

Columbia, South Carolina
March 18, 2011

41