## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| Chris Anselmo, *individually, and on behalf of all others similarly situated, and* Tracy Torrise, | ) ) ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. 9:09-cv-02466-DCN |
| | ) | |
| The West Paces Hotel Group, LLC; WPHG Daufuskie Human Resources, LLC; William R. Dixon, Jr., *individually*; Gayle Bulls Dixon, *individually*; and Horst H. Schulze, *individually*, | ) ) ) ) ) ) | |
| Defendants. | ) | **ORDER** |
| and | ) ) | |
| The West Paces Hotel Group, LLC; WPHG Daufuskie Human Resources, LLC; Horst H. Schulze, *individually*; | ) ) ) ) | |
| Cross Claimants, | ) | |
| vs. | ) ) | |
| William R. Dixon, Jr. *individually*; Gayle Bulls Dixon, *individually*; | ) ) ) | |
| Cross Defendants, | ) | |
| and | ) ) | |
| William R. Dixon, Jr., individually; | ) ) | |
| Cross Claimant, | ) | |
| vs. | ) ) | |
| The West Paces Hotel Group, LLC; WPHG Daufuskie Human Resources, | ) ) ) | |
| Cross Defendants. | ) ) | |

This matter came before the court on November 13, 2012 for a fairness hearing

1

regarding the Parties' proposed settlement.  For the reasons set forth below, the court grants the joint motion for settlement and grants plaintiffs' motion for attorneys' fees.

## I.  BACKGROUND

The settlement was preliminarily approved on July 26, 2012.  Thereafter, Class Counsel gave notice of this hearing on July 31, 2012 to the Paid Time Off Class ("PTO Class") Members and on August 1, 2012 to the Benefits Class Members.

At the Fairness Hearing, the Parties represented to the court that: (i) the proposed Settlement Agreement is fair, reasonable and adequate, and should be given final approval; (ii) Class Counsel's Petition for Fees and Expenses is reasonable and should be granted; and (iii) no objections have been filed to the Settlement Agreement or Class Counsel's Petition for Fees and Expenses.  In support of the latter point, Class Counsel filed the Affidavit of Carla L. Pierce ("Pierce Affidavit") that confirms a diligent effort to serve notices of conditional class certification and proposed settlement on all class members was made and no objections to settlement were filed and only one opt-out was received.

### A.  The Settlement Agreement

The Settlement Agreement consists of Three Hundred Thousand Dollars ($300,000.00) to be paid by The West Paces Hotel Group, LLC, WPHG Daufuskie Human Resources, LLC and Horst H. Schulze individually (the "WPHG Defendants"). The Settlement Agreement will be distributed in three parts: (1) payment to PTO Class Members for unpaid PTO benefits accrued but unused as of December 31, 2008; (2) payment to Benefits Class Members for alleged violations of the Employee Retirement

Income Security Act ("ERISA") and Consolidated Omnibus Budget Reconciliation Act ("COBRA"); and (3) an amount for attorneys' fees, costs and expenses directly related to this case:

| | |
|---|---:|
| <u>Total Settlement Amount:</u> | $300,000.00 |
| Paid Time Off ("PTO")(90%) | 165,238.75 |
| Health Benefits List (135 @ $134) | 18,090.00 |
| Fees | 100,000.00 |
| Expenses | 16,607.70 |
| **TOTAL:** | **$299,936.45** |

<u>Excess</u>: $63.55 (to defray settlement administration costs)

### B. The Terms of the PTO Class Settlement

The Parties have agreed that wages in the form of accrued but unpaid PTO will be paid to the PTO Class Members. *See* S.C. Code Ann.§ 41-10-10).  The PTO related compensation of the Settlement Agreement will be approximately ninety percent (90%) of the PTO owed to those Members.  It will be distributed by the Claims Administrator within forty five (45) days of receipt of the Settlement Payment from the WPHG Defendants in the form of payroll checks with a corresponding W-2 issued to each PTO Class Member.  These PTO-related payments will be taxed as compensation from which all required state and federal tax withholdings will be taken out by the WPHG Defendants.  Individuals receiving PTO-related payments will be responsible for any other tax liabilities that may occur as a result of such payment.  The

3

list of PTO Class Members and specific PTO payments were filed with the Motion for Preliminary Approval and are attached hereto as Exhibit A.

### C. The Terms of the Benefits Class Settlement

The Parties have further agreed that compensation will be paid to the Benefits Class Members based on Plaintiffs' ERISA claims under 29 U.S.C. § 1132(a)(l)(B) and COBRA claims under 29 U.S.C. §§ 1161-1168.   The health benefits related compensation of the Settlement Payment will be $134 total per class member (inclusive of all former employees and their dependents, if any, i.e., that the $134 could be for a single person (with no dependents) or multiple people (employee plus dependents)) who were denied notice as required under COBRA and/or ARRA and/or denied health benefits coverage.   The Claims Administrator will distribute the health benefits related compensation within forty five (45) days of receipt of the Settlement Payment from the WPHG Defendants.   The WPHG Defendants will issue individual 1099s for each eligible Benefits Class member for delivery to and distribution by the Claims Administrator at the appropriate time.   The list of Health Benefits Class Members is attached hereto as Exhibit B.

## II.   DISCUSSION

A district court has discretion to approve a class settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Courts in the Fourth Circuit have applied the review methodology enunciated by In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158-59 (4th Cir. 1991), which adopted the analysis set forth in In re Montgomery Cnty. Real Estate Antitrust Litig., 83 F.R.D. 305 (D. Md. 1979).

### A. The Joint Motion for Settlement

The parties have jointly submitted their proposed settlement agreement, ECF No. 230.

#### 1. The Fairness and Adequacy of the Agreement

The focus of the reviewing court is on a series of factors in the two major categories of fairness and adequacy. Montgomery Cnty., 83 F.R.D. at 315The "fairness" factors are: 1) the posture of the case at the time settlement was proposed; 2) the extent that discovery has been conducted; 3) the circumstances surrounding the negotiations; and 4) experience of counsel in the relevant type of class action litigation. Jiffy Lube, 927 F. 2d at 159. The focus of the fairness inquiry is to establish the presence or absence of collusion between the parties and to make sure that the settlement was the result of good faith bargaining at arms-length. Montgomery Cnty., 83 F.R.D. at 315.

The "adequacy" of the settlement is evaluated under the five Montgomery County factors:

> 1) the relative strength of the plaintiffs' case on the merits; 2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; 3) the anticipated duration and expense of additional litigation; 4) the solvency of the defendant and the likelihood of recovering on a litigated judgment; and 5) the degree of opposition to the settlement.

Id. at 316 (internal citations omitted). These factors "weigh the likelihood of plaintiffs' recovery on the merits against the amount offered in settlement." Id. at 316. While it is necessary for the reviewing court to consider the facts and law of the case, it is not

necessary or desirable for the court to "try" the case in determining the adequacy of the settlement. Id.

The following fairness factors support a finding that the Parties' proposed settlement: this case was nearly three years old when settlement was reached; the parties had engaged in extensive motions practice on both procedural and substantive issues; written discovery had commenced but was incomplete; and mediation had occurred. Moreover, the parties were represented by firms experienced in class action litigation and employment litigation.

Likewise, the court also finds that this settlement is adequate. While Class Counsel has set forth that they believe the merits of the Plaintiffs' case are strong, they have tempered this analysis with the availability of substantial defenses and the difficulties of proof. After weighing these factors, Class Counsel has strongly suggested that settlement is the preferable alternative. The court gives substantial weight to this suggestion.

The court concludes that the Settlement Agreement set forth in the proposed Joint Stipulation of Settlement and Release between Plaintiffs and Defendants [Docket No. 219-1] is fair, reasonable and adequate. It was apparent at the Fairness Hearing that no collusion existed between the Parties in agreeing to this settlement; rather, the Settlement Agreement was made as a result of good faith and arms-length bargaining.

### 2. Notice to Class Members

As referenced above, the Pierce Affidavit evidences that Class Counsel made a diligent effort to give notice of the conditional class certification and proposed

settlement to all class members. Specifically, on July 31, 2012, Notices of Conditional Certification of PTO Class and Proposed Settlement and Request for Exclusion forms were mailed to the forty-seven PTO Class Members. On August 1, 2012, Notices of Conditional Certification of Benefits Class and Proposed Settlement and Request for Exclusion forms were mailed to the one hundred thirty-six Benefits Class Members. Of these, a small minority of notices have been returned. Class Counsel has made a diligent effort to re-mail returned notices to updated addresses and continues to follow up on any returned notices through today. See Phillips Petroleum Co. v. Irl Shutts, 472 U.S. 797, 812 (1985) ("[T]he procedure followed by Kansas, where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process.") Moreover, Class Counsel believes the few remaining missing PTO and Benefit Class Members will come forward when they hear their former colleagues are receiving compensation.

Class Counsel has not received any objections to the settlement and has confirmed no objections were filed with the Court. One Benefits Class Member, Dirke Von Hollen, submitted a Request for Exclusion form. Therefore, Mr. Von Hollen is not part of the Benefits Class and is unaffected by this Order.

### B. Plaintiffs' Motion for Attorneys' Fees

Class Counsel seeks an award of attorneys' fees and expenses of $116,607.70. The amount of $16,607.70 is to reimburse the two firms prosecuting this action for expenses advanced and the remaining $100,000.00 is to compensate them for their efforts, which is in accordance with the one-third contingency fee arrangement agreed

to by the putative class members.   The approximate 33% for fees provided here is reasonable in light of all pertinent factors, including precedent and beneficial results obtained. See Kidrick v. ABC Television & Appliance Rental, Inc., Docket No. 97-cv-0069, 1999 WL 1027050, at *2 (N.D.W. Va. May 12, 1999) (noting that use of a percentage method of calculating attorneys' fees is favored in class action settlements where there is a common fund, and that awards of 30%, 35%, and even 50% have been held reasonable).   Class Counsel has supported this request with a Petition for Attorney's Fees and Expenses and Memorandum in Support, [Docket No. 225], as well as the Affidavit of Justin Lucey, Esq., [Docket No. 225-1].

The court agrees that the Attorney's Fees sought by Class Counsel are reasonable under the two methods that courts within this circuit have employed, namely the percentage of the fund method set forth in In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 733 (3d Cir. 2001) and the lodestar multiplier cross-check set forth in Barber v. Kimbrell's Inc., 577 F.2d 216 (4 Cir. 1978).

The seven Cendent factors considered when using the percentage of the fund method are:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

In re Wachovia Corp. ERISA Litig., Docket No. 09-cv-262, 2011 WL 5037183, at *3 (W.D.N.C. Oct. 24, 2011); see also In re The Mills Corp. Sec. Litig., 265 F.R.D. 246, 261 (E.D. Va. 2009).   Applying the Cendent factors to this case demonstrates the

reasonableness of the Attorney's Fees sought. First, the legal representation provided by Class Counsel in this case produced a substantial recovery for the clients. Second, no class members have filed objections to the proposed settlement terms and attorneys' fees. Third, lead Class Counsel has demonstrated he is of good professional reputation as a business, employment, finance and complex transaction litigator in the Charleston community and has worked hard to achieve good results in an efficient manner for his clients. Fourth, Class Counsel expended approximately 2,800 hours in legal representation in this case, more than half being attorneys' hours for total billable time in excess of $500,000, with additional hours incurred related to the settlement approval and administration. Fifth, Class Counsel accepted this representation on a contingency basis despite the substantial risk of nonpayment that existed due to the difficulties Plaintiffs had in proving Defendants willfully or negligently violated the provisions of S.C. Code Ann. § 41-10-10 *et seq*. and (for certain Plaintiffs) the provisions of ERISA/COBRA. Sixth, public policy weighs in favor of granting Class Counsel's Attorney's Fees in this class action in light of the fact that many Plaintiffs would not have pursued their claims individually. Rather, enforcement of the Plaintiffs' claims (for failure to pay Paid Time Off under S.C. Code Ann. § 41-10-10 et seq. and failure to comply with the provisions of ERISA/COBRA) had a much higher likelihood of success when done by way of a class action than through individual lawsuits. Finally, attorneys' fee awards based upon contingency contracts are regularly approved by courts. On the rare occasion that an appellate court reviews such, the awards are upheld. Global Protection Corp. v. Halbersberg, 503 S.E. 2d 483,

89 (S.C. Ct. App. 1999) (upholding an attorneys' fee award of 40% of plaintiffs' recovery).

The lodestar multiplier cross-check further supports the reasonableness of the Attorney's Fee award. Class Counsel has demonstrated that the attorney's fees sought have a 0.2 lodestar multiplier, which is well below the appropriate acceptable range. See Jones v. Dominion Res. Servs., Inc., 601 F. Supp. 2d 756, 766 (S.D.W.Va. 2009) ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee.").

Each method demonstrates that Class Counsel obtained a beneficial result for the Plaintiffs. A person becomes a prevailing party plaintiff by virtue of having obtained an enforceable judgment, consent decree or settlement giving some of the legal relief sought. See Arvinger v. Mayor of Balt., 31 F.3d 196, 202 (4th Cir. 1994) (obtaining an enforceable judgment which materially alters the relationship of the parties makes plaintiff prevailing party). Class Counsel engaged in arm's length settlement negotiations with counsel for the WPHG Defendants, resulting in a settlement of Three Hundred Thousand Dollars and Zero Cents ($300,000.00) that benefits all parties.

### III.   CONCLUSION

Based on the foregoing, the court **GRANTS** the joint motion for settlement, Docket No. 219, and **GRANTS** plaintiffs' motion for attorneys' fees, Docket No. 225.

AND IT IS SO ORDERED.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**November 19, 2012**
**Charleston, South Carolina**